James R. DONGO, et al.

v.

James A. BANKS, et al.

v.

## J. I. HOLCOMB MFG. CO.

Supreme Judicial Court of Maine.

Argued June 10, 1982.

Decided Aug. 5, 1982.

804 (1972) (single incident).

Reef & Moores, P. A., William B. Jordan (orally), Portland, for plaintiff.

Hunt, Thompson & Bowie, James M. Bowie (orally), M. Roberts Hunt, Frank W. DeLong, III, Portland, for J. I. Holcomb.

Richardson, Tyler & Troubh, Kevin M. Gillis (orally), Portland, for Bankses.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

This complex products liability case has been twice tried to a jury in Superior Court (Cumberland County), the presiding justice having declared a mistrial after the return of the jury's verdict in the first trial.[1] Defendant J. I. Holcomb Mfg. Co. (hereinafter "Holcomb"), the manufacturer of the product that caused plaintiffs' injuries, brings the present appeal from the judgment entered after the second trial. The other parties cross-appeal. We find no error in the judgments entered below except for a mistake in the way in which the Superior Court factored the pretrial settlement between the plaintiffs and the defendants Banks into the judgment entered against the remaining co-defendant Holcomb.

The case arose out of an accident that occurred on July 13, 1972, at the residence of defendants James and Cora Banks on Chesley Avenue in Portland. Minor plaintiffs Robert and James Dongo, aged five and six, respectively, were playing with other small children in a broken-down stationwagon on the Bankses' property. In the rear of the stationwagon the children found a bottle of "Flo-Free" drain opener. One of the children began shaking the bottle, splattering the minor plaintiffs. Since the principal, indeed almost the only, ingredient in Flo-Free was sulfuric acid, the resulting injuries were severe.

The Flo-Free had been produced and marketed by defendant Holcomb. James Banks' father, a carpenter, had borrowed the bottle of Flo-Free from a fellow worker at a job site in order to unclog a drain in his apartment. After using the Flo-Free, the senior Banks put it in the back of his stationwagon with some carpenter's tools, meaning to return it. Before he did, though, the car broke down. The senior Banks left the car, still containing the Flo-Free and the tools, in the yard of his son and daughter-in-law, now defendants. The neighborhood children then gained entry to the car, though there is some evidence that they had been told to keep out of it.

Minor plaintiffs Robert and James Dongo, with their parents Truman and Geraldine Dongo, sued James and Cora Banks,[2] who in turn brought a third-party complaint against the manufacturer, Holcomb, alleging negligence and breach of warranty. Thereupon, by a cross-complaint the Dongos joined Holcomb as co-defendant with the Bankses on the same theories; and Holcomb filed a cross-claim against the Bankses for indemnification and contribution. Prior to trial, the Dongos settled with the Bankses for $15,000 and agreed that they would indemnify the Bankses for any fur-

1. See Dongo v. Banks, Me., 399 A.2d 574 (1979), for our dismissal of the appeal attempted after the first trial.

2. The Bankses are the parents of Douglas Banks, who was also playing in the car with the Dongo boys and was injured with them. With his parents he sued Holcomb in a sepa-

rate action. This action was consolidated for trial with the Dongos' action against the Bankses and Holcomb and the Bankses' third-party action against Holcomb. The jury denied recovery to Douglas Banks and he does not appeal. Thus, for the purposes of this appeal, the Douglas Banks action may be disregarded.

ther payment, except for the $15,000, that the Bankses might be compelled to pay on account of the Flo-Free accident.

The first jury trial, held late in 1977, ended in a mistrial and an order for a new trial. The second jury trial held in August, 1980, produced a special verdict, finding Holcomb guilty of both negligence and breach of warranty with respect to the injured children, fixing the total damages suffered by the Dongo boys at $162,000, and reducing those damages to $135,000 because, as the jury found, they were themselves chargeable with some degree of negligence. On a further submission by the presiding justice, the jury found specially that as between the Bankses and Holcomb, fault was assignable 60% to the Bankses and 40% to Holcomb.

After the parties filed motions for judgment several months later, the Superior Court on February 25, 1981, entered judgment for the minor Dongo plaintiffs against both the Bankses and Holcomb in the amount of $120,000, representing the Dongos' recoverable damages of $135,000 less the $15,000 they had received in settlement from the Bankses. The court also entered judgment in the amount of $72,000 in favor of Holcomb against the Bankses on Holcomb's cross-claim for contribution, such amount being 60% of the $120,000 total judgment entered in favor of the Dongos against each of the co-defendants, Holcomb and the Bankses. The court denied the claims of all other parties.

### HOLCOMB'S APPEAL

1. *The dictionary*

While the jury was deliberating at the end of the first trial, the jurors asked for a dictionary and the presiding justice granted their request. The jury continued its deliberations and returned a verdict for Holcomb. After discharge of the jury, counsel for plaintiffs approached the bench to ask why the jury had been given the dictionary. The court thereupon recalled the foreman of the jury and asked him whether the dictionary had been used during the deliberations. The foreman reported that the jury

had used the dictionary to look up the word "proximate." The presiding justice, refusing insistent requests of Holcomb's counsel to investigate further whether plaintiffs had suffered any actual prejudice from the jury's use of the dictionary, declared a mistrial and granted plaintiffs' motion for a new trial. He noted: "The definition in the dictionary is not that used by the court in its instructions to the jury and is different in many respects from the court's definition of proximate cause."

■ The decision to grant a mistrial is within the discretion of the trial judge and will not be overturned except for abuse of discretion. *State v. Henderson*, Me., 435 A.2d 1106, 1108 (1981); *Simmons v. State*, Me., 222 A.2d 366, 368 (1966). The issue of proximate causation was plainly crucial in this case, in which the plaintiffs were persons whom the manufacturer claimed it never expected its product to reach. The trial judge properly concluded that permitting the verdict to stand could result in substantial injustice.

■ Holcomb contends that plaintiffs' motion should have been denied because it was not made until after the verdict was announced, though plaintiffs had knowledge of the impropriety while the jury was still deliberating. We have previously held in situations such as this that, if a party knows of its objection before the verdict is rendered but maintains a tactical silence in hope of obtaining a favorable verdict, the objection is waived. Otherwise, a party would be able secretly to shift the risk of an unfavorable verdict entirely to the other party. *See Pelletier v. Milford Land & Lumber Co.*, Me., 5 A. 262 (1886) (per curiam); *Tilton v. Kimball*, 52 Me. 500 (1864). We reaffirm that principle as necessary to maintain the integrity of the trial and the sanctity of the verdict.

■ Nevertheless, the principle does not apply here, for at least two reasons. First, the justice in declaring a mistrial was correcting his own error in permitting the jury to use the dictionary. In setting aside the verdict he was exercising his inherent and

nondelegable responsibility to safeguard the fairness of the trial and the integrity of the verdict. *See Simmons v. State, supra.* He would have been justified in declaring a mistrial even with no motion at all. Second, it is not clear from the record on appeal that plaintiffs' counsel did in fact engage in the kind of tactical maneuver that Holcomb now claims. The Dongos argue on appeal that their counsel did not learn of the objectionable incident until the jury was returning to the courtroom with the verdict, and that counsel did not have an opportunity to bring their concern to the justice's attention until after the verdict had been rendered. On the record before us it is not possible for us conclusively to find that either party is correct on this disputed point. The presiding justice was in the best position to determine whether plaintiffs were indulging in tactical delay in raising the objection. He made no such finding. On this record his decision to grant plaintiffs' motion for a new trial was no abuse of discretion.

■ Holcomb argues that, before declaring a mistrial, the justice should have conducted a further investigation, requiring the jurors to testify as to the substance of their deliberations in order to determine whether the improper use of the dictionary in fact resulted in prejudice to plaintiffs. Jurors may not so testify. Such an investigation would have been improper. *See Patterson v. Rossignol,* Me., 245 A.2d 852, 856–57 (1968). The fact of the jurors' exposure to the misleading dictionary definition was itself sufficient grounds for mistrial. In *Simmons v. State, supra,* we held that receipt by the jury of out-of-court evidence, not subject to cross-examination or impeachment, raises a presumption that the verdict was affected. That presumption is even more appropriate in the case at bar: the issue was one not of fact, with which lay persons are competent to deal, but rather one of law, on which the jury must take its instructions exclusively from the judge, not from a dictionary, whether it is right or wrong. In any event, the definition of "proximate" which the jury found in the dictionary was, the justice specifically declared, legally incorrect. Under such circumstances the justice properly declared a mistrial. He could hardly have done otherwise.

## 2. *Effect of violating a safety statute*

■ Plaintiffs contended at trial that the packaging and labeling of Flo-Free violated the requirements of the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.* (1976). The trial judge instructed the jury as to the legal effect of a violation of that statute. Holcomb claims on appeal that the instruction was incorrect. Since no objection was made at the time the instruction was given, the issue on appeal is whether the instruction deprived Holcomb of a fair trial and worked an injustice. *Nyzio v. Vaillancourt,* Me., 382 A.2d 856, 863 (1978); *Wescott v. Vickerson,* Me., 284 A.2d 902, 904 (1971); *cf. State v. Daley,* Me., 440 A.2d 1053 (1982) (interpreting M.R.Crim.P. 52(b), which authorizes appellate review of "[o]bvious errors or defects affecting substantial rights ... although they were not brought to the attention of the court").

The instruction was:

Any violation of the applicable statutes by a manufacturer or distributor of a product constitutes a prima facie case of negligence. And unless explained or justified could constitute the negligence, itself.

The rule in Maine is that violation of a safety statute is not negligence per se, but only evidence of negligence. *See Jones v. Billings,* Me., 289 A.2d 39, 41 (1972). Characterizing proof of violation of the statute as "prima facie" evidence of negligence is correct insofar as it states that the jury may draw an inference of negligence from the violation. But the presiding justice went further. From his statement that the violation "unless explained or justified could constitute the negligence, itself," the jury might have inferred that proof of the violation shifted the burden of proof on the issue of negligence from plaintiffs to Holcomb. That would be incorrect. Insofar as *Elliott v. Montgomery,* 135 Me. 372, 374,

197 A. 322, 323 (1938), and *Nadeau v. Perkins*, 135 Me. 215, 216–17, 193 A. 877, 878 (1937), hold that a showing of statutory violation does shift the burden of proof to the defendant, we disavow them as having any continuing precedential authority. *Jones v. Billings, supra*, states the correct rule.

■ However, the instruction at issue, though misleading, does not rise to the level of reversible error where no objection was made at trial. There was ample evidence otherwise supporting the jury's finding of negligence, and on appeal Holcomb makes no contention to the contrary. Flo-Free was almost pure sulfuric acid, a potent substance whose fearsome efficacy was physically demonstrated in court;[3] Holcomb never tested the container for safety; and the container had no safety cap although safety caps were available in the period in which the product was being sold. Holcomb contends that Flo-Free was marketed to and intended to be used by "industrial, commercial, and institutional" customers and consequently that its duty of care extended only to sophisticated users. But Flo-Free was not labeled as an industrial product and was packaged in a bottle similar in appearance to many consumer products; there was nothing to indicate that only sophisticated users should handle it or that it was unfit for use by consumers. Furthermore, plaintiffs' expert testified that Flo-Free was unsafe even for its intended purposes. In light of all this evidence, the judge's instruction on the legal effect of a violation of the Federal Hazardous Substances Act, though in part wrong, did not result in any injustice or impair the basic fairness of the trial.

### 3. *Exclusion of settlement agreement*

Prior to the first trial, plaintiffs Dongos settled with the individual defendants, Mr.

and Mrs. Banks, for $15,000 and agreed to indemnify them for any further liability that might be imposed on the Bankses in excess of that amount. Because of that settlement agreement, the real interests of the parties at trial were not what they would appear to be from the parties' formal positions in the litigation. The Bankses' complete liability was already fixed by the settlement at $15,000, and consequently, the Bankses had no interest in showing that plaintiffs were themselves negligent and therefore not entitled to a full recovery. Similarly, because the Dongos' recovery from the Bankses was already established, the Dongos had no interest in showing that the Bankses were negligent. Indeed, in view of Holcomb's cross-claim against the Bankses for contribution, the indemnity provision of the settlement agreement made it strongly in the Dongos' interest that the Bankses be found free of fault.

The trial justice granted the Bankses' *in limine* motion to exclude from evidence any information in regard to the settlement agreement. Arguing that the fact that the Dongos and the Bankses had settled might influence their testimony as critical witnesses in ways not apparent to the jury, Holcomb on appeal contends the exclusion was prejudicial error. We do not agree.

Under M.R.Evid. 408 a settlement is not admissible to show liability or damages, but it may be admitted on the issue of bias or prejudice of a witness. *See* Field & Murray, *Maine Evidence* 82 (1976). In this case Holcomb sought to admit evidence of the settlement only for the purpose of showing possible bias of the Dongos and the Bankses, who appeared as witnesses. The evidence was therefore admissible under Rule 408.

■ However, evidence admissible under Rule 408 is still subject to the requirement

---

**3.** Contrary to Holcomb's contention on appeal, the presiding justice committed no abuse of discretion in permitting plaintiffs' expert witness to demonstrate the efficacy of sulfuric acid in dissolving various materials, such as cotton, gauze, and nylon, on which it was poured. *See Cope v. Sevigny*, Me., 289 A.2d

682, 689 (1972). Although plaintiffs' counsel gave Holcomb no notice of the intended demonstrative evidence in advance of trial, the justice permitted extended voir dire of the witness and was justified in concluding that Holcomb was not prejudiced by the surprise evidence.

of Rule 403 that the trial judge weigh the probative value of the evidence against the possibility that it may be unfairly prejudicial, confusing, or misleading. *See* Field & Murray, *supra.* Here, the presiding justice could properly have considered the possibility that the settlement agreement would have been treated as an admission of liability by the Bankses; or the small amount of the settlement might have been seen as an admission by the Dongos that their case was not worth a great deal. There were at any rate some visible, though slight, indications from which the jury might have been able to infer that the Dongos and the Bankses might want to fix liability on Holcomb rather than on each other: the Dongos and the Bankses were families of apparently modest means, while Holcomb was an out-of-state corporation; the Dongos and the Bankses lived on the same street and their children played together; and Mrs. Dongo's reference in her testimony to defendant James Banks by his nickname "Jim" possibly bespeaks some degree of familiarity. Under the circumstances we cannot say that the presiding justice was required as a matter of law to admit evidence of the settlement agreement.

### 4. *Other points*

Holcomb on its appeal raises several other claims of error. We have examined them all and find merit in none of them.

### THE CROSS–APPEALS

### 1. *Comparative fault*

The jury determined the damages suffered by each of the minor Dongo plaintiffs, then reduced the damages to reflect negligence attributable to each of them. The court entered judgment for plaintiffs in the reduced amount.

4. The Robert Dongo special verdict form read in full as follows:
    1. Was J. I. Holcomb Manufacturing Co. guilty of negligence which was a proximate cause of the accident?
        Jury Vote    Yes ____ No ____
    2. Was J. I. Holcomb Manufacturing Co. guilty of a breach of warranty which was a proximate cause of the accident?
        Jury Vote    Yes ____ No ____

On appeal the Dongos claim that the Superior Court erred in reducing the minor plaintiffs' damages in any degree. Because Holcomb was specially found by the jury to be liable for breach of implied warranty as well as for negligence, argue the Dongos, the fact that plaintiffs' injuries were caused in part by their own negligence is of no relevance. Holcomb counters that the concept of comparative fault is fully applicable in an action by a negligent plaintiff against a defendant liable for breach of implied warranty, and that the situation is within the purview of the Maine comparative negligence statute, 14 M.R.S.A. § 156 (1980).

The issue of whether and to what extent a plaintiff's negligence is or should be a defense to an action for breach of implied warranty has been much discussed by commentators and in courts of other jurisdictions. *See, e.g., Melia v. Ford Motor Co.,* 534 F.2d 795 (8th Cir. 1976); *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978); W. Prosser, *Law of Torts* § 102 (4th ed. 1971). The issue has not previously been decided by this court, and on examination of the record we find that it has not been preserved for appellate review in this case.

■ By agreement of the parties the case went to the jury on special verdict forms. The identical form for each of the minor plaintiffs asked the jury to determine in question 1 whether Holcomb was negligent, in question 2 whether Holcomb committed a breach of implied warranty, and in question 3 whether plaintiff was negligent. Then, in question 4, which was to be answered even if Holcomb was guilty of a breach of warranty, but not of negligence, each form asked whether the fault of the minor plaintiff was equal to or greater than the fault of Holcomb.[4] The record shows that before

3. Was Robert Dongo guilty of negligence which was a proximate cause of the accident?
        Jury Vote    Yes ____ No ____

4. If your answers to questions 1 or 2 and 3 are "Yes," was the fault of Robert Dongo equal to or greater than the fault of J. I. Holcomb Manufacturing Co.?
        Jury Vote    Yes ____ No ____

their use the special verdict forms were the subject of an extensive conference in chambers between the justice and counsel for all the parties. Holcomb's counsel asserted that the negligence of plaintiffs was a defense to the claim for breach of implied warranty. After considerable discussion of the proper wording of question 4, the intent of all present was summed up in a final exchange. The effect of that exchange, coming along with the special verdict forms, was that the plaintiffs in the consolidated actions, which at that time included the child Douglas Banks, see note 2 above, waived any argument that the Maine comparative fault statute did not apply to reduce any liability of Holcomb for breach of warranty. Although no statement of the Dongos' attorneys appears in the final exchange as recorded in the transcript of the trial proceedings, they were present and had participated actively earlier in the conference and the justice recorded that he "heard three okays." In view of their acquiescence, if not outright agreement, the Dongos' attorneys have not preserved for review the question they now try to assert in the Law Court. *Globe Air, Inc. v. Thurston,* Me., 438 A.2d 884, 886 (1981); *Century Homes, Inc. v. Plaisted,* Me., 412 A.2d 389, 391 (1980); *Harrington v. Inhabitants of Town of Garland,* Me., 381 A.2d 639, 642–43 (1978).

▆▆ It is a desirable trial practice to submit to the jury interrogatories that will elicit jury findings adequate to enable the trial justice, or later the Law Court, to enter a final judgment on whatever legal determinations are ultimately made, thus to avoid further evidentiary trial of facts. *See Roy v. Merrill,* Me., 267 A.2d 386, 389 (1970); 1 Field, McKusick & Wroth, *Maine*

*Civil Practice* § 49.1 at 648–49 (2d ed. 1970); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2505 at 494–98 (1971) (judicial discrimination and foresight required in use of special verdicts). That, however, was not what the parties were doing here. In approving the special verdict forms, they sought findings on both the negligence and breach of warranty theories of plaintiffs' complaint, and then agreed that the further question on comparative fault must be answered even if the jury found that the only basis of Holcomb's liability was breach of warranty. Thus, plaintiffs in this case stipulated away their present argument that comparative fault is not relevant to the "contractual" basis of liability.

### 2. Indemnity and contribution

The Bankses seek indemnification from Holcomb on the theory that Holcomb is liable for breach of implied warranty, while the Bankses are liable "only" for negligence. Holcomb seeks contribution from the Bankses because the jury apportioned their total negligence in the proportions of 60% to the Bankses and 40% to Holcomb. The trial court agreed with Holcomb and ordered judgment for Holcomb for contribution from the Bankses in the amount of 60% of the Dongos' judgment against it. Both the Dongos[5] and the Bankses cross-appeal on this issue.

Like the analogous issue of comparative fault between a negligent plaintiff and a defendant liable for breach of implied warranty, the issue of contribution or indemnity between one defendant liable in negligence and a co-defendant liable for breach of implied warranty is one that has not heretofore been decided in Maine, although

---

5. If your answer to question 1 or 2 is "Yes" and your answer to question 3 is "No," what is the plaintiff Robert Dongo's total damage?
    $\_\_\_\_\_$ Jury Vote \_\_\_\_\_

6. If your answer to question 4 is "No," what is Robert Dongo's damages, after deducting a just and equitable sum having regard to his negligence?
    $\_\_\_\_\_$ Jury Vote \_\_\_\_\_

5. Since by their settlement agreement with the Bankses the Dongos have agreed to indemnify the Bankses from any liability on account of the July 13, 1972, accident beyond the $15,000 the Bankses have already paid, the practical consequence of Holcomb's judgment for contribution against the Bankses is to reduce by 60% the amount Holcomb must in end result pay to the Dongos. *See* n. 9 below.

it has been addressed in other jurisdictions. *See, e.g., Skinner v. Reed-Prentice Division, Package Machinery Co.,* 70 Ill.2d 1, 15 Ill. Dec. 829, 374 N.E.2d 437 (1977); *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). As with the preceding issue, we find on examination of the record that the Bankses did not at trial preserve the issue for appellate review.

■ As discussed in the preceding section, counsel for the Bankses[6] agreed that the comparative negligence act applied to the warranty claim against Holcomb, as well as to the negligence claim. The form special verdicts first submitted to the jury contained no question on the apportionment of fault between the co-defendants, Holcomb and the Bankses. Immediately after the jury returned its special verdicts, finding *inter alia* that Holcomb was guilty of breach of implied warranty, the justice, without any further conference of record with counsel, submitted an additional interrogatory asking the jury to apportion negligence between Holcomb and the Bankses according to a scale on which their combined negligence was represented by 100%. Counsel for the Bankses made no reservation against the application of the same principle of comparative fault as between the co-defendants as was by the special verdict form to be applied between the plaintiffs (including Douglas Banks) and defendant Holcomb. It would be anomalous if contributory negligence on the part of the plaintiffs was by agreement to reduce or defeat their implied warranty claims against Holcomb, but co-defendant Bankses' contributing fault was to be disregarded in deciding indemnification and contribution claims between the Bankses and Holcomb.[7] The defendant Bankses would be put in a better position than the plaintiff

Dongos. This patent anomaly leads us to conclude, in the absence of any reservation made promptly to the contrary, that counsel understood, and at least acquiesced, that the comparative fault principle should in this case be applied also to the contribution-indemnification questions, whatever the basis of Holcomb's liability. In light of the discussions had earlier between the court and counsel in which all agreed that plaintiffs' contributing negligence was to be compared with Holcomb's fault in breach of implied warranty, the Bankses had a duty to speak up if they wished to assert a different controlling principle as between co-defendants. They did finally speak up in a memorandum filed in support of their motion for judgment long after trial, but that came too late for the submission of any further interrogatories to the jury. *Cf. Reville v. Reville,* Me., 289 A.2d 695 (1972) (appellant foreclosed from raising constitutional issue for first time on appeal because of absence of opportunity for trial court to make appropriate subsidiary findings of fact). The Bankses' failure to raise their present contention in timely fashion at trial forecloses our consideration of it on appeal. *See Century Homes, Inc. v. Plaisted, supra.*

3. *Factoring the settlement into the judgment*

Because the Dongos settled with the Bankses prior to trial for $15,000, it was necessary to reduce plaintiffs' award by that amount: plaintiffs could not recover more than they suffered in damages, after reduction for their own contributing fault. The situation is governed by 14 M.R.S.A. § 163 (1980), authorizing the trial judge to reduce the verdict by the amount of the settlement in an action against joint tort-

---

6. The same counsel represented both the minor Douglas Banks as plaintiff in the consolidated action against Holcomb, see n. 2 above, and his parents as defendant owners of the premises where the Dongo boys and Douglas Banks were injured.

7. In judicially adopting the comparative fault principle for contribution between joint tort-

feasors, *Packard v. Whitten,* Me., 274 A.2d 169, 180 (1971), noted:

> It is particularly appropriate that when recovery by a Plaintiff is measured on the basis of proportionate fault, as our Legislature has determined it should be, the ultimate assumption of responsibility should rest on the same equitable basis.

feasors.[8] In the case at bar, the justice made a reduction pursuant to section 163, attempting to effectuate the jury's determination that fault rested 60% with the Bankses and 40% with Holcomb. The Dongos urge that the justice erred in his mathematics. We agree.

The jury determined that the total damages recoverable by the Dongos were $135,000. It is readily apparent how that total of $135,000 of damages recoverable from the co-defendants should be shared between them. *Packard v. Whitten*, Me., 274 A.2d 169, 180 (1971). Holcomb should ultimately pay a 40% share, or $54,000. Absent the Dongo-Banks settlement agreement, the Bankses should pay a 60% share, or $81,000. Since the Bankses have already paid $15,000, their remaining liability released by the settlement is $66,000.

The Superior Court justice used the following procedure. Before entering judgment on the docket, he reduced the aggregate award by the settlement payment of $15,000, from $135,000 to $120,000. The justice then entered judgments in that aggregate amount against Holcomb in favor of Robert and James. Finally, the judge entered judgment in the amount of $72,000 in favor of Holcomb on its cross-claim for contribution against the Bankses, the $72,000 figure representing 60% of the $120,000 in judgments obtained by the Dongos against Holcomb.

▬ That computation was in error. Since the Bankses had already paid $15,000 to the Dongos, they would by the judgments entered below have a total liability of $87,000 (not $81,000, as it should be), and Holcomb would pay a net of only $48,000 (not $54,000, as it should be). Holcomb has received the benefit of a settlement that it did not pay.

The error is easily rectified by modifying the amount that Holcomb is permitted to recover from the Bankses on its cross-claim for contribution. The proper amount is derived by taking 60% of $135,000 and subtracting $15,000 from the amount so obtained, for a final figure of $66,000. This adjustment will apportion the Dongos' recoverable damages between the Bankses and Holcomb in the proper amounts of $81,000 and $54,000.[9]

The entry is:

Appeal denied.

Cross-appeal of the Bankses denied.

Cross-appeal of the Dongos denied in part and sustained in part.

Judgment of the Superior Court on Holcomb's cross-claim for contribution against the Bankses modified to read as follows:

Judgment in favor of J. I. Holcomb Mfg. Co. on its cross-claim against James and Cora Banks in the amount of $66,000.

As so modified, judgments below affirmed.

All concurring.

---

8. 14 M.R.S.A. § 163 reads in full:

Whenever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury shall not be a bar to a subsequent action against the other person or persons also causing the injury.

Evidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent trial against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

9. As modified, the judgments in this case along with the Dongo-Banks settlement will have the following practical end result for Holcomb: The Dongos have a judgment for $120,000 against Holcomb, which in turn has a judgment for contribution in the amount of $66,000 against the Bankses. However, the settlement agreement makes the Dongos responsible for that $66,000 of contribution, so that the net liability of Holcomb to the Dongos is $54,000.