James E. **MITCHELL** and Elizabeth Mitchell

v.

Patrick H. **FLYNN.**

Supreme Judicial Court of Maine.

Argued March 16, 1983.

Decided June 9, 1983.

Mark S. Kierstead, Waterville (orally), for plaintiffs.

Patrick H. Flynn (orally), pro se.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

Defendant Flynn appeals from a judgment against him for breach of contract and from an order granting plaintiffs a new trial on three other counts following a jury trial in Superior Court, Kennebec County. We deny his appeal.

In 1974, the Mitchells purchased two lots for $38,000 in a development at Kineo Island on Moosehead Lake. They financed their purchase through a special arrangement with Flynn, who was president, chief executive officer, and majority shareholder in the developer, the Moosehead Kineo Company (Company). First, they gave a $20,000 first mortgage to First Consumers Savings Bank and an $18,000 second mortgage to the Company. Then, in a Contract to Guarantee Payments (Guarantee Contract), Flynn agreed to personally pay the Mitchells' interest, taxes, and property management fees on both lots, as well as the principal on the company's mortgage, if the Mitchells so requested. Under the contract, Flynn also agreed to purchase the lots from the Mitchells for the remainder of the bank's mortgage once the Company's mortgage was fully satisfied; finally, should the Mitchells have sold the lots at a profit, any payments made by Flynn would be reimbursed with interest.

Initially, Flynn made the requested payments under the Guarantee Contract. He ceased making the payments in 1975, however, and the Mitchells began making the payments on their own.

The Mitchells brought a seven count complaint against Flynn. Count I charged breach of the Guarantee Contract, while the other counts alleged wrongdoing in other aspects of the Mitchell's dealings with Flynn. Only Flynn's appeal from the judg-

ment on Count I, however, is now properly before us.

■ Flynn contends that an attorney-client relationship existed between Mr. Mitchell, an attorney, and himself and that the relationship rendered the Guarantee Contract per se unenforceable. Flynn's argument focuses on the facts that Mr. Mitchell was an attorney and that he drafted the Guarantee Contract. There was no evidence introduced, however, that when the parties signed the Guarantee Contract in 1974 either one believed that an attorney-client relationship existed or that the agreement was, in fact, other than an arms-length business transaction. We therefore find no basis for Flynn's contention that the Guarantee Contract should be declared unenforceable.

■ Flynn also argues that the presiding justice improperly formulated the remedy for Flynn's breach of the Guarantee Contract. First, Flynn objects to the justice's calculation of monetary damages. In response to one jury interrogatory, the jury, calculating the actual amount by which the Mitchells had been harmed by Flynn's breach, found as one element of damages $912.21 paid on the principal of the Mitchells' bank mortgage and not reimbursed by Flynn. The next interrogatory asked the jury to calculate "future expected out of pocket loss" to the Mitchells by subtracting its assessment of the present value of the Mitchells' lots from the balance due on their bank mortgage. (The Mitchells' second mortgage, with the Company, had previously been satisfied). The jury found no future damages, as it assessed the value of the Mitchells' lots at $20,000 with only a $19,087.79 mortgage to be paid off. The presiding justice awarded as damages the sum of the figures found by the jury in the first interrogatory. Flynn, however, notes that the difference between the principal due on the bank mortgage and the lots' value totals $912.21, the same amount as that paid by the Mitchells on the principal of their bank mortgage. He then argues that the jury must have intended not to give the Mitchells the benefit of that $912.21 as an element of present damages since the Mitchells would theoretically benefit by that amount in the future.

The jury interrogatories relied on by Flynn do not support his contention. The first interrogatory specifically found the $912.21 mortgage payment as an element of actual damages. The next interrogatory called for an assessment of future damages; there is no indication that the jury intended in its answer to that question to rescind the $912.21 award made in the prior answer. Moreover, to the extent that the Mitchells might theoretically have received a windfall by retaining property worth $20,000 for a $19,087.79 mortgage, the presiding justice's equitable award erased that possibility. By requiring the Mitchells to sell their lots to Flynn for $19,087.79, the Mitchells are denied the opportunity to receive the $912.21 increment challenged by Flynn.

■ Flynn also raises two objections to the presiding justice's equitable order requiring Flynn to purchase the lots. First, he contends that the presiding justice did not properly balance the equities between the parties. Because Flynn did not request a finding of facts, we must assume that the presiding justice ruled against Flynn on "all factual issues necessarily involved in the decision. [S]uch assumed findings will not be set aside unless clearly erroneous." *Blackmer v. Williams,* 437 A.2d 858, 861 (Me.1981). Upon our review of the record, we cannot say that the justice's ruling requiring Flynn to specifically perform the Guarantee Contract he had already entered into was clearly erroneous.

■ Second, Flynn contends that he was given inadequate notice of the hearing which resulted in the equitable order. Flynn, however, phoned the Court the day of the hearing and read into the record a statement specifically stating that he had no objection to the Court's considering the Mitchells' motion for equitable relief in his absence. Later, after receiving a copy of the hearing transcript, Flynn, in a letter to the presiding justice, again indicated that he had given his consent for the justice to rule on the Mitchells' motion. In view of

Flynn's clearly stated lack of objection to the hearing procedure, he failed to preserve for appellate review his allegation of defective notice. *See Dongo v. Banks,* 448 A.2d 885, 892 (Me.1982).

 Finally, Flynn seeks to appeal from the presiding justice's order of a new trial on three other counts. An order granting a new trial, however, is not an appealable final judgment. *Town of Eliot v. Burton,* 392 A.2d 56, 58 n. 2 (Me.1978); *Chenell v. Westbrook College,* 324 A.2d 735, 736 n. 1 (Me.1974); *Bernat v. Handy Boat Service, Inc.,* 239 A.2d 651, 652–53 (Me.1968); Field, McKusick & Wroth, *Maine Civil Practice* §§ 59.4, 73.1 (1970 & supp. 1981).[1]

The entry is:

Appeal denied. Judgment affirmed.

All concurring.

---

1. The presiding justice did enter an order, pursuant to M.R.Civ.P. 54(b), finding that the judgment on Count I constituted a separate and final, and therefore appealable, judgment in the action.