1999 ME 189

**PEERLESS DIVISION, LEAR SIEGLER, INC., et al.[1]**

v.

**UNITED STATES SPECIAL HYDRAULIC CYLINDERS CORP.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1999.

Decided Dec. 17, 1999.

Jon A. Haddow, (orally), Farrell, Rosenblatt & Russell, Bangor, Charles E. Bloom, Herschel, Accettola, Bloom & Mills, Toledo, OH, for appellant.

Frederick J. Badger Jr., (orally), Richardson, Whitman, Large & Badger, P.C., Bangor, Mark A. Kircher, Quarles & Brady, Milwaukee, WI, for appellee.

---

1. This appeal concerns a cross-claim between two defendants in a personal injury action. The caption reflects the parties in interest on appeal.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] United States Special Hydraulic Cylinders Corp. a/k/a Hunger Hydraulics (Hunger) appeals from a judgment entered in the Superior Court (Penobscot County, *Delahanty, J.*) in favor of Peerless Division, Lear Siegler, Inc. (Peerless) on its cross-claim seeking indemnification from Hunger. The judgment was rendered in the context of a personal injury action brought by Arthur Mann against Peerless and Hunger. On appeal, Hunger contends that the court erred in denying its motion for satisfaction of judgment, in finding that it was liable under an indemnity agreement, and in denying its request to amend its answer to the Peerless cross-claim. Because we disagree with the court's analysis of Hunger's liability and conclude that Peerless made no payment attributable to Hunger's negligence, we vacate the judgment.

[¶ 2] The facts in this case are complex, although largely undisputed, and may be summarized as follows: Arthur Mann and his wife, Sandra, commenced a personal injury action against Peerless and Hunger.[2] Mann had been injured in the course of attempting to repair a 500 inch hydraulic cylinder that had been sold to Mann's employer, Wheelabrator. During the repair, "there was an explosion and fire" that injured Mann. The Manns' claims at trial were that Peerless and Hunger had negligently provided repair information and that the accident resulted in significant damages.

[¶ 3] The hydraulic cylinder in question was initially purchased by Hunger from the manufacturer. Hunger then resold the cylinder to Peerless in 1985. The transaction between Hunger and Peerless was initiated by a telephone order from Peerless. Peerless installed the cylinder on a platform designed to unload trucks carrying wood chips. The unloading platform was then sold to Wheelabrator. Following the order, Peerless sent Hunger a purchase order that contained in small print, on its reverse side, fourteen provisions, two of which purported to require Hunger to indemnify Peerless for any losses arising from a breach of warranty or "from the delivery or use" of the equipment purchased.

[¶ 4] Prior to trial on the Manns' complaint, Peerless filed a cross-claim seeking indemnification from Hunger for any losses it might sustain that were attributable to Hunger's negligence. In its answer, Hunger admitted that it had agreed to the two indemnification provisions in the purchase order. It moved for summary judgment, however, contending that the Manns' allegations did not trigger either provision. The court denied Hunger's motion. At approximately the same time, Hunger negotiated a settlement with the Manns, who executed a *Pierringer* release and indemnity agreement in exchange for a $500,000 payment.[3] This agreement, however, did not apply to "that portion of a cross-claim ... filed for contractual indemnity based upon a purchase order between" Hunger and Peerless. As a result of the release, the Manns dismissed their action against Hunger.

[¶ 5] At trial, Hunger and Peerless agreed that the cross-claim would be decided by the court, based on findings made by the jury in the Manns' underlying personal injury action against Peerless. The jury found that Arthur Mann's total dam-

---

2. Two other defendants were named in the complaint, but the Manns' claims against them were dismissed.

3. For a discussion of the origins of *Pierringer* releases and their general effect, see *Thurston v. 3K Kamper Ko., Inc.*, 482 A.2d 837, 839, n.

1 (Me.1984). *See also* Arlyn H. Weeks, *The Unsettling Effect of Maine Law on Settlement in Cases Involving Multiple Tortfeasors*, 48 *Me. L.Rev.* 77 (1996) for general background on Maine law of contribution and settlement.

ages were $2,885,000 and that Sandra Mann's damages for loss of consortium were $900,000, for a total of $3,785,000 in damages. The court entered judgment against Peerless for the entire verdict. In a special verdict, the jury found both Hunger and Peerless negligent and apportioned the fault between them at 40% for Hunger and 60% for Peerless. Peerless moved to amend the judgment, arguing that the Manns' verdict should be reduced by Hunger's $500,000 settlement and 40% share of fault, with a resulting liability for Peerless of $1,771,000. Before the court acted on that motion, however, Peerless negotiated a settlement with the Manns, who executed a satisfaction of the judgment against Peerless in return for payment of $1,770,000.[4]

[¶ 6] Following the judgment in favor of the Manns, the court entered a judgment on the Peerless cross-claim, ruling that the indemnification provisions were unenforceable under the Uniform Commercial Code. Peerless immediately filed a motion to amend or alter the judgment, arguing that because Hunger had never challenged the enforceability of the indemnity provision, this theory could not form the basis of the court's judgment. The court agreed, vacated the prior judgment, and entered judgment for Peerless. The court rejected Hunger's contention that Mann's injuries did not fall under the indemnification provisions and ordered Hunger to indemnify Peerless for "that portion of the [Manns'] judgment and damages paid attributable to the negligence of Hunger, 40 percent."

[¶ 7] Hunger moved to amend its pleadings to challenge the enforceability of the indemnification provisions and request-

ed that the court either alter its judgment or grant Hunger a new trial on the cross-claim to prove that the agreement was unenforceable. Hunger also moved for the entry of satisfaction of judgment, arguing that Peerless had not paid any portion of the Mann judgment attributable to Hunger's negligence. In response, Peerless requested that Hunger's responsibility be fixed at 40% of the jury verdict. The court denied Hunger's motions. In rejecting the motion for satisfaction of judgment, the court found that the Peerless settlement of $1,770,000 replaced the jury verdict as the amount of common liability and that Hunger was liable to Peerless for 40% of the settlement, namely $508,000.[5] Hunger appeals from this judgment.

[¶ 8] Hunger argues on appeal that the jury verdict is the proper measure of common liability to the Manns; because Peerless has not paid more than 60% of that verdict, Peerless has suffered no loss attributable to Hunger's negligence. Hunger's assertion is based on its motion for satisfaction of judgment pursuant to M.R. Civ. P. 60(b)(5). We review a denial of a motion for relief from judgment for abuse of discretion and will "vacate a judgment only when the denial of the Rule 60(b) motion works a plain and unmistakable injustice against the defendant." *McKeen and Assoc. v. Department of Transp.*, 1997 ME 73, ¶ 4, 692 A.2d 924, 925. Rule 60(b)(5) allows a court "upon such terms as are just [to] relieve a party ... from a final judgment [if] (5) the judgment has been satisfied, released, or discharged ...." M.R. Civ. P. 60(b)(5).

[¶ 9] A determination of the respective liabilities of joint tortfeasors, as

4. A 60% share of the $3,785,000 verdict is $2,271,000.

5. Even if the Peerless settlement were the proper measure of the common liability of the defendants, the correct determination of Hunger's proportion would require a payment to Peerless of $210,800 rather than $508,000. The latter figure is reached by applying the Hunger settlement as a set off first, and then computing Hunger's share of the balance. We have previously rejected this method of computation. *See Dongo v. Banks*, 448 A.2d 885, 894 (Me.1982). The proper calculation of Hunger's share of the Peerless settlement would be 40% of the Peerless settlement ($1,770,000 × .40 = $710,800) reduced by Hunger's settlement ($500,000) resulting in a payment of $210,800 to Peerless.

between themselves, requires a determination of the extent of their common liability. When two tortfeasors cause a single injury through their independent tortious acts, the victim has the option to recover full damages from either or both. *See Robinson v. LeSage*, 145 Me. 300, 301, 75 A.2d 447, 449 (1950). In the present case, the injury to Mann was caused by the joint negligence of Hunger and Peerless who were each subject to joint and several liability. *See* 14 M.R.S.A. § 156 (1980).[6] Absent the settlement with Hunger, the measure of the common liability of Hunger and Peerless would have been the jury verdict, and either could have been required to pay the full verdict to the Manns. *See, e.g., Baker v. Jandreau*, 642 A.2d 1354, 1355 (Me.1994) (holding defendant liable for full judgment despite jury verdict that he was only 10% negligent; no other party to the case was found negligent, so defendant had to bear the entire burden). If the Manns had chosen to proceed against either Hunger or Peerless for the full amount of the verdict, the defendant thus singled out could not have used the jury's apportionment of fault to escape payment to the Manns of the entire verdict.

[¶ 10] When Hunger settled with the Manns, they executed a *Pierringer* release in which the Manns relinquished, among other things, their right to proceed directly against Hunger. The Manns also agreed to indemnify Hunger should it be required to contribute money to Peerless, unless that requirement arose from the contractual indemnification agreement. Three effects relevant to the joint and several liability of Peerless and Hunger flow from the Manns' release. The first is statutory: Peerless's liability to the Manns on the full jury verdict is reduced by the amount of the Hunger settlement. *See* 14 M.R.S.A. § 163 (1980);[7] *Hewitt v.. Bahmueller*, 584 A.2d 664, 666 (Me.1991) (holding that the section 163 reduction was mandatory).

[¶ 11] The second effect of the *Pierringer* release is that it indirectly limits Peerless's exposure on the jury verdict. In theory, Peerless would remain liable for the full verdict, but Hunger could be required, in an action for contribution, to pay Peerless all sums over Peerless's 60% share.[8] *See Lavoie v. Celotex Corp.*, 505 A.2d 481, 482–83 (Me.1986) ("[T]he amount recoverable in an action for contribution is based on the proportion of contributive fault of each joint tortfeasor to the damages suffered by the plaintiff."). The *Pierringer* release would then allow Hunger to recover from the Manns any money paid in contribution to Peerless.[9] In the present case, however, the *Pierringer* release specifically excluded the Manns from any re-

---

6. The statute provides that:

   In a case involving multi-party defendants, each defendant shall be jointly and severally liable to the plaintiff for the full amount of the plaintiff's damages. However, any defendant shall have the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant.

   14 M.R.S.A. § 156 (1980).

7. The statute provides that:

   After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

   14 M.R.S.A. § 163 (1980).

8. In all cases, Hunger's settlement ultimately returns to its benefit. If, after having paid the verdict less Hunger's settlement, Peerless did maintain a contribution action against Hunger, the common liability would remain the full verdict. *See Dongo*, 448 A.2d at 894. Hunger, however, would be able to deduct the $500,000 settlement from its contribution obligation to Peerless. *See id.* Peerless would not be able to use the Hunger settlement to reduce its 60% share of the common liability. To do otherwise would allow Peerless to receive "the benefit of a settlement that it did not pay." *Id.*

9. The rule of joint and several liability places the risk of an insolvent defendant upon its co-defendant rather than upon the plaintiff.

sponsibility for payments by Hunger to Peerless on the basis of the contractual indemnity agreement, thus eliminating any direct or indirect barrier to recovery of the full verdict by the Manns from Peerless. If the Manns had been paid the full verdict by Peerless, Peerless would have sought payment from Hunger through its indemnity agreement.[10] By virtue of the exemption contained in the *Pierringer* release, Hunger would have no recourse against the Manns.

[¶ 12]  Finally, it is the third effect of the *Pierringer* release that is determinative in this case. At a bare minimum, the release shields Hunger from any direct liability on the jury verdict. Other jurisdictions that have examined the common liability of co-defendants have held that a settlement, negotiated by a party in the position of Peerless, replaces a jury verdict only when the settlement extinguishes the liability of both defendants on the verdict. *See, e.g., Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 518 S.E.2d 301, 309 (1999) (interpreting S.C.Code Ann. § 15–38–40(D) (Supp. 1998)); *Pietz v. Indermuehle*, 89 Wash. App. 503, 949 P.2d 449, 456 (1998) (interpreting Wash. Rev.Code § 4.22.040(2) (1998)); *Ziarko v. Soo Line Railroad*, 161 Ill.2d 267, 204 Ill.Dec. 178, 641 N.E.2d 402, 411–12 (1994) (noting that settlement agreement specifically eliminated liability

as to both defendants and thus prevented the plaintiff from proceeding against the non-settling defendant for the balance of judgment). We agree with this rule; the Peerless settlement could only become the measure of common liability if it also eliminated Hunger's liability on the jury verdict.

[¶ 13]  The Peerless settlement affects no rights the Manns could have asserted directly against Hunger. Those rights had previously been eliminated by the *Pierringer* release. The Peerless settlement is a measure of Peerless's liability alone and does not replace the verdict. The jury was charged to determine the combined liability of both defendants.[11] Only the jury verdict encompasses the common liability of both Peerless and Hunger.

[¶ 14]  Having determined the correct measure of common liability, we next must quantify Hunger's liability on the cross-claim. Peerless argues that, if the jury verdict is the proper measure of damages, it is entitled to a payment of 40% of $3,785,000 .[12] Their argument is at odds with settled indemnification law.[13] "There must be loss, not merely liability, before indemnity is due. No money judgment may be rendered for indemnity until the party seeking indemnity has suffered an actual loss." *Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1, 13

---

10.  The indemnification agreement does not alter the relative obligations of the parties which continue to be determined by the proportionate fault of each defendant. The court found that "[t]here is nothing in the contract or other evidence to suggest that Peerless intended or expected protection for its own negligence ." This finding is not challenged on appeal and requires that Peerless pay more than its proportionate share of the common liability before indemnification is implicated.

11.  Ultimately, the Manns rejected the verdict and negotiated a separate determination of liability, but they did so with each defendant separately—they agreed before trial that the Hunger damages were $500,000 and after trial that the Peerless damages were $1,770,-000.

12.  Peerless cross-appealed from the judgment in order to preserve this argument in the event that the jury verdict formed the common liability of the parties.

13.  Peerless maintains that its position is equitable because "Hunger should not be allowed the benefit of Peerless' [sic] post-verdict negotiated bargain." Peerless did get the benefit of its bargain with the Manns; it was potentially liable for $2,271,000 but only paid $1,770,000. Causing the settlement to become the judgment, on the other hand, took away from Hunger any benefit it had from settling before trial, with a corresponding windfall to Peerless. If a defendant wishes to limit its exposure, the proper time to do so is before trial.

(1980) (internal citations omitted). *See also Cherry v. Tanda, Inc.*, 327 Ark. 600, 940 S.W.2d 457, 461 (1997).[14] Peerless's request for a compensation tied to the jury verdict is an attempt to gain recovery for liability rather than loss; Peerless has not yet paid any money attributable to Hunger's negligence as determined by the jury. There is no authority that would justify deviating from this established rule.[15] Because Peerless paid $1,770,000, a sum less than its proportionate share of the jury verdict, namely, $2,271,000, it has not paid any amount attributable to Hunger's negligence and has no basis for a recovery under the indemnification agreement.

[¶ 15] Hunger raises two further arguments on appeal: It argues that the Peerless purchase order does not require it to indemnify Peerless and that, even if it did, the court erred when it refused to allow Hunger to amend its pleadings to assert that the indemnification agreement was not enforceable. Because we conclude that Peerless did not pay any amount recoverable from Hunger even if it were liable under the indemnification provisions in the purchase order, we have no reason to reach these issues.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to enter a judgment consistent with the opinion herein.

---

14. The parties have agreed that a choice of law clause contained on the reverse side of the purchase order requires that Arkansas law governs interpretation of the indemnification agreement.

15. Under the Peerless analysis, the non-settling, more negligent defendant could actually make money from its decision to go to trial, if it were judicious in its post-trial settlement. In the present case, if Peerless were to get 40% of the jury verdict, it would have paid only $756,000 ($1,770,000 settlement— $1,014,000 indemnity from Hunger) while Hunger would have paid $1,014,000 to Peerless alone ($3,785,000 × .40 = $1,514,000— $500,000) and $1,514,000 in total damages. Had Peerless settled for $1,000,000, Peerless would make $14,000 from the trial ($1,014,000 payment from Hunger—$1,000,000 settlement), despite the fact that Hunger never agreed to indemnify Peerless for Peerless's own negligence. We have rejected such inequitable distributions in the past. *See Dongo,* 448 A.2d at 894.