STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-311

JPW-Cum- 7/18/2012

JOHN RICCI

Plaintiff

v.

STEPHEN J. BARR, M.D.,
MAINE OTHOPAEDIC CENTER, and
MAINE MEDICAL CENTER

Defendants

STATE OF MAINE
Cumber                   Office

JUL 13 2012

RECEIVED

### DECISION AND ORDER ON DEFENDANT MAINE MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT

Before the court is defendant Maine Medical Center's Motion for Summary Judgment on all "direct and indirect" claims against it in this action. The motion has been fully briefed and oral argument was held on June 29, 2012.

### BACKGROUND

John Ricci ("Ricci" or "Plaintiff") was treated at Maine Medical Center ("MMC") on August 12-13, 2007 for injuries he sustained after a fall from a ladder set on a staging platform. He was brought to MMC at his own request because he believed it to be the finest hospital in the state. (Pl. Add'l SMF ¶¶ 59, 65.) The X-rays taken of Ricci revealed a comminuted fracture of the right calcaneus (heal bone) and heel joint. After initially being treated by the emergency department staff, Ricci was told that the "on-call orthopedic surgeon was in the hospital" and that he would be examined soon. (Pl. Add'l SMF ¶ 58.) The on-call orthopedic surgeon, Dr. Barr, examined Ricci soon thereafter in the emergency room. (Pl. Add'l SMF ¶ 52.)

1

On August 13, 2007, Dr. Barr performed surgery, called open reduction and internal fixation (ORIF), to repair the injury. This surgery included placing a metal plate and screws into the area to stabilize the bones. The surgery was performed at MMC with the assistance of MMC staff and on MMC equipment. (Pl. Add'l SMF ¶ 54.) When Ricci was discharged from MMC following the surgery he was given an appointment card with Maine Orthopaedic Center's name, phone number, and address on it and was instructed to speak with Maine Orthopaedic Center to make follow up appointments with Dr. Barr. (Def. SMF ¶ 28.) Ricci received his follow-up care from Dr. Barr at Maine Orthopaedic Center. (Def. SMF ¶¶ 29, 30.) Dr. Barr performed a second surgery on Ricci to remove the hardware placed during the first surgery. (Pl. Add'l SMF ¶ 56.) This surgery was also conducted at MMC. Shortly thereafter, Ricci visited a different orthopedic surgeon for a second opinion regarding the condition of his heel and ankle.

In June 2007, MMC entered into a twelve-month contract with Maine Orthopaedic Center in which Maine Orthopaedic Center agreed that certain of its employed physicians would provide on-call orthopedic surgery services at MMC. (Def. SMF ¶ 17.) This contract states that the physicians providing services will be independent contractors and that MMC would not exercise supervision or control over the physicians. Dr. Barr was paid for his services by Maine Orthopaedic Center, not MMC. (Def. SMF ¶ 19.)

On May 20, 2009, Plaintiff filed a Notice of Claim against MMC, Dr. Barr, and Maine Orthopaedic Center, pursuant to 24 M.R.S. §§ 2851-2859 (2011). Following the medical malpractice screening panel process, on or about March 11, 2011, the Plaintiff filed a five count Complaint against MMC, Dr. Barr, and Maine Orthopaedic Center. The claims alleged against MMC are claims for vicarious and direct liability for

2

negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, agency and/or direct liability, and punitive damages. By agreement, the parties have dismissed with prejudice and without costs the counts of intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. In the remaining claims, the Plaintiff alleges that MMC was directly negligent in staffing and credentialing Dr. Barr as the on-call orthopedic surgeon for diagnosis and/or treatment of patient injuries in which he does not possess the required skills or expertise to property treat such injuries. (Compl. ¶ 47.) The Plaintiff also alleges that MMC is indirectly or vicariously liable for the negligence of Dr. Barr because an agent, servant, and/or employee relationship existed between Dr. Barr and MMC. (Compl. ¶¶ 47, 60-61.)

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (*quoting Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). "Even when one party's version of the facts appears more credible and persuasive to the court," summary judgment is inappropriate because the court may not weigh the evidence presented. *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 17, 917 A.2d 123. In considering a motion for summary judgment, the court should view the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702.

3

## 1. Indirect Claims

An employer may be held vicariously liable for the negligence of an employee but not for the negligence of an independent contractor. *Legassie v. Bangor Publishing Co.*, 1999 ME 180, ¶ 5, 741 A.2d 442. Determining whether an individual is an employee or an independent contractor requires the court to weight the eight factors[1] cited in *Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931), the most important of which is the "employer's" right to control the "employee" including the right to employ or discharge and the right to control and direct the details of the work. *Id.* at ¶ 6. An "employee's" status is a mixed question of law and fact. *Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814 (when determining an employee's status under the Workers Compensation Act).[2]

An entity may also be held liable for the negligence of another when a principal/agent relationship has been established. An agency relationship may be created through an express grant of authority to act on the principal's behalf or by vesting the agent with "apparent authority." Apparent authority may be established only by the conduct of the principal toward third parties. "A principal [] creates apparent authority by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act

---

[1] The eight factors are: (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of the business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; and (8) whether the work is part of the regular business of the employer. *Legassie*, 1999 ME 189, ¶ 6, n.1.

[2] The Law Court has recognized that it has not been consistent with whether it characterized an employee's status as a question of law or a question of fact. *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me. 1982) (looking at the status of the employee in the context of the Workers Compensation Act). That is, when a certain set of facts could be reasonably interpreted either to create or not create an employee relationship, it is a question of fact but that there are certain sets of facts where as a matter of law the court could say that an employee relationship does not exist.

4

done on his behalf by the person purporting to act for him." *Steelstone Indus. v. N. Ridge Ltd. Pshp.*, 1999 ME 132, ¶ 13, 735 A.2d 980 (internal quotation marks omitted); *see also* RESTATEMENT (THIRD) AGENCY § 3.03 (2006). Therefore, apparent agency may only be created by the principal through words or actions manifested to a third party and not by the alleged agent's words or actions. By its nature, apparent authority may be created by knowing inaction as well as affirmative actions. The existence of an agency relationship is a question of fact to be determined by a factfinder. *Id.* at ¶ 12; *MacQuinn v. Patterson*, 85 A.2d 183, 186 (Me. 1951).

The parties argue whether the concept of apparent authority ought to be applied to a medical malpractice case involving a hospital. MMC cites to the *Gafner v. Down East Community Hospital* case, which contains strong language cautioning against the expansion of tort liability in an areas of law already significantly controlled by the Legislature. 1999 ME 130, ¶ 42, 735 A.2d 969. The Plaintiff argues that imposing indirect liability on a hospital could change the nature of the relationship between hospitals and physicians, such that the hospitals would be required to assume control over the medical care provided by physicians. This is the exact outcome the Law Court was concerned with when it refused to recognize "corporate liability" as a cause of action against a hospital in *Gafner*. (Def. Mem. 11.) The Plaintiff argues that any analogy to *Gafner* is misplaced because that case dealt with a wholly new cause of action, whereas apparent authority has been recognized in Maine for many years. (Pl. Mem. 8-9.) Furthermore, the Plaintiff argues that the *Gafner* decision explicitly stated that the concept of vicarious liability was not included in its discussion of "corporate liability" and that one reason for not adopting the "corporate liability" cause of action was that

5

traditional theories such as *respondeat superior* have long proved adequate for establishing liability on behalf of hospitals. (Pl. Mem. 9.)

The Defendant's reliance on *Gafner* is misplaced. Although the Law Court articulated some very important policy concerns over expanding tort liability for hospitals, the Law Court explicitly stated that it was not discussing liability created by agency. The changing nature view of hospitals from mere physical facility in which independent doctors perform their work to comprehensive healthcare providers may ultimately open hospitals to more tort liability exposure but this is a result of the changing nature of the profession not a result of expansion of legal theories. A hospital may continue to avoid indirect liability by not vesting apparent authority in the independent physicians who practice within the hospital facility.

Looking first at whether or not Dr. Barr should be considered an "employee" under the eight factors listed in *Murray's Case*, the court finds that Dr. Barr was not an employee of MMC because of the independent nature of the physicians' work, the lack of MMC's right to control that work, and the method of payment for services.[3] Additionally, there is no evidence in the record establishing an express agency relationship between MMC and Dr. Barr.

Turning to the question of apparent authority, the court notes that the case law from many jurisdictions and the Restatement (Second) of Agency § 267, agree that the injured party's subjective understanding of the role of the purported agent is insufficient to establish an agency relationship. That is, the determination of whether an agency relationship exists must be made based on the conduct of the principal and the reasonable

---

[3] The Plaintiff points to Dr. Barr's confusion over the question of whether or not he was employed by MMC during his deposition. The court does not find his confusion telling as his status as "employee" is a question of law and not one about which a lay person would be expected to formulate a legal conclusion. (*See* Pl. Reply SMF ¶ 16.)

6

reliance of the injured party on that conduct. The Plaintiff lists eighteen statements of fact that it claims are the actions of the hospital that created an agency relationship with Dr. Barr. (Pl. Mem. 4-6.) The only statements of fact offered that describe conduct of MMC are (1) that MMC informed the Plaintiff that Dr. Barr was the "on call" orthopedic surgeon, (2) that the "on-call" orthopedic surgeon was in the hospital and would see the Plaintiff soon, and (3) that no member of the MMC staff ever informed the Plaintiff that Dr. Barr was not an employee. (Pl. Mem. 4-6; Pl. Add'l SMF ¶¶ 58, 70, 71; Def. SMF ¶ 27.) The remaining facts state either the Plaintiff's subjective understanding or belief or are Dr. Barr's statements or acts. Because only the principal's actions can create apparent authority, those facts are irrelevant.

The Law Court has repeatedly stated that the existence of an agency relationship and the existence and extent of apparent authority are questions of fact for the factfinder. However, where the undisputed factual information is clearly deficient to survive a motion for a directed verdict, summary judgment is appropriate because there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Here, the only facts that the Plaintiff asserts are MMC's statements about the "on-call" surgeon being in the hospital and lack of statement about Dr. Barr's status. The court finds that these statements (or lack of affirmative statement) are insufficient to find that MMC vested apparent authority in Dr. Barr. The use of the phrase "on call orthopedic surgeon" distinguished Dr. Barr from a in-house employee of the hospital. Judgment should enter in favor of MMC.

2.      Direct Claims

In Count I, the Plaintiff alleges that MMC acted negligently by staffing and credentialing Dr. Barr as the on-call orthopedic surgeon for diagnosis and/or treatment of

7

patient injuries in which he does not possess the required skills or expertise to property treat such injuries. To prove a claim for negligence, the plaintiff must prove that the defendant owed a duty of care, that the defendant's conduct was a breach of the standard of care, and that the breach was the proximate cause of the defendant's damages. In medical malpractice cases, the plaintiff typically can only meet the burden of establishing a breach standard of care by introducing expert testimony, unless the negligence and harmful results are sufficiently within common knowledge. *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979).

MMC argues that because the Plaintiff has not designated an expert witness to offer an opinion on the conduct of MMC and because Dr. Hammerschlag, the Plaintiff's expert regarding Dr. Barr's conduct, could not find fault with MMC's actions, the Plaintiff has failed to prove any direct negligence. (Def. Mem. 17.) MMC also argues in its reply memorandum that because the Plaintiff did not address this count in its opposition, it has waived the claim and summary judgment should be granted in favor of MMC.

The Plaintiff's only counter-assertion is that Dr. Hammerschlag did not agree that Dr. Barr is a well-trained orthopedic surgeon. (Pl. Reply SMF ¶ 14.) However, the Plaintiff has not produced any evidence or expert opinion regarding the proper standard of care or MMC's actions that breached that standard. Without putting forward the elements of its claim in response to MMC's argument that it has failed to meet its burden, the claim cannot survive summary judgment.

**The entry is:**

8

The defendant Maine Medical Center's Motion for Summary Judgment is GRANTED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 7/17/12

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Tina Nadeau Esq

Defendant MMC-Karen Frink Wolf Esq
Defendant Barr and ME Ortho-Mark Lavoie Esq

9