Gisela J. **THURSTON** and David L. **Weaver**

v.

**3K KAMPER KO., INC.**

Supreme Judicial Court of Maine.

Argued May 11, 1984.

Decided Oct. 10, 1984.

Lowry & Platt, Donald G. Lowry (orally), Robert D. Platt, Portland, for Gisela Thurston.

Hewes, Culley, Feehan & Beals, John F. Lambert, Jr. (orally), Richard D. Hewes, Portland, for David L. Weaver.

Hunt, Thompson & Bowie, James M. Bowie (orally), M. Roberts Hunt, Rebecca H. Farnum, Glenn H. Robinson, Portland, for 3K Kamper.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

3K Kamper Ko., Inc., appeals from judgments entered in the Superior Court (Cumberland County), following a jury trial, awarding $750,000 in damages to plaintiff Gisela Thurston and $50,000 in damages to plaintiff David Weaver, based upon 3K's negligence, breach of warranty, and strict liability in tort. On appeal, 3K contends (1) that the court erred in its ruling upon a motion *in limine;* (2) that the court erred in the procedure it adopted for submitting the issue of fault apportionment to the jury; and (3) that the court erred in refusing to reduce the amount of the damages awarded by the jury. We affirm the judgments.

On March 15, 1978, Gisela Thurston and David Weaver purchased a Cruise Master Mini Motor Home from 3K Kamper Ko., Inc., a retail dealer in Lewiston. On March 29, Thurston and Weaver were preparing to make coffee in the camper, having parked the vehicle at the Pine Crest Trailer Park in Scarborough. Thurston struck a match to light a burner on the stove, when an explosion occurred. As a result, Thurston received both second and third degree burns, and Weaver was also slightly injured.

Thurston subsequently filed a complaint in Superior Court (Cumberland County), naming Georgie Boy Manufacturing Inc., manufacturer of the camper, Vitreous Steel Products Co., manufacturer of the propane stove, and Marshall Brass Co., manufacturer of the propane gas regulator, as defendants. The complaint alleged negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness, and strict liability in tort. Weaver later filed his own complaint against these defendants, alleging the same four theories of liability. Upon a motion by defendant Vitreous Steel, the cases were consolidated. Subsequently, the plaintiffs moved successfully to amend their complaints so as to join 3K Kamper as an additional defendant. Defendant Georgie Boy filed a third party complaint seeking contribution from Riverside Trailer Rentals, d/b/a Frank's Winnebago, a South Portland firm that allegedly filled the camper's propane tank on the day of the explosion.

Prior to trial, plaintiffs settled with defendants Georgie Boy, Vitreous Steel, Marshall Brass, and Riverside. Under terms of these settlements, Thurston received a total of $207,500 and Weaver a total of $13,-999.99 In addition, plaintiffs executed releases (so-called "Pierringer" releases) with

each defendant.[1]  Based on these releases, the four settling defendants moved for summary judgment as to the cross-claims for contribution filed against them.  The court granted these motions following a hearing, and dismissed all cross-claims and third party claims filed by these defendants.[2]  The order also stated that

> evidence may be offered on the issue of the fault of the dismissed Defendants and special interrogatories shall be submitted to the jury with instructions pursuant to Me.R.Civ.P. 49 for the purpose of determining the respective percentages of fault contributed by each of the foregoing dismissed defendants.

The motions for summary judgment were not opposed by 3K Kamper; indeed, it appears that the order granting summary judgment was prepared and submitted to the court by counsel for defendant 3K.

A seven day trial by jury then commenced between the plaintiffs and the sole remaining defendant, 3K Kamper.  Pursuant to the terms of the summary judgment order, evidence relating to the liability of the settling parties was introduced along with evidence of 3K Kamper's liability.  However, in response to a motion *in limine* and in accordance with 14 M.R.S.A. § 163, the court ordered that no reference be made to the settling defendants as parties or former parties to the litigation, or to the fact that a settlement with them had been reached.  At the close of trial, special verdict forms were distributed to the jury.

1. The term "Pierringer release" derives from the Wisconsin case of *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), which arose out of an explosion at a concrete mixing plant in Port Washington, Wisconsin.  Plaintiffs Pierringer, et al., settled with all of the defendants except one, Greisch, and executed releases with each of the settling parties.  According to the terms of each release, the settling defendant was released from plaintiffs' action and that portion of the cause of action attributable to the settling defendant's fault was contractually discharged; plaintiffs reserved the right to press the remainder of their cause against all nonsettling defendants (Greisch); plaintiffs agreed to indemnify the settling defendants from all claims of contribution made by nonsettling defendants; and plaintiffs agreed to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.  Based on these releases, the settling defendants in *Pierringer* were granted summary judgment as to the cross-claims for contribution made by defendant Greisch.  Their own cross-claims against Greisch were dismissed.  Greisch appealed, and the Wisconsin Supreme Court affirmed, noting that the apportionment of fault between the settling and nonsettling defendants may be determined by the finder of fact in a trial of the remaining action between plaintiffs and the nonsettling defendants.  "The instant releases contemplate such an issue of allocation as binding upon the plaintiff because he has satisfied that part of his cause of action for which liability is found to be attributable to the *settling tort-feasers* [sic].  The issue between the plaintiff and the nonsettling defendant ... is the percentage of causal negligence, if any, of the non-settling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors .... The determination of this issue ... does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely a part of the mechanics by which the percentage of causal negligence of the nonsettling tort-feasor is determined.  It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event."  *Pierringer*, 124 N.W.2d at 111–12.  In essence, the Pierringer release is predicated on the notion that each tortfeasor should be liable only for that portion of the loss or injury attributable to his own fault, and therefore the release does not preclude submission of the issue of the released tortfeasor's fault to the fact-finder in a suit against a nonsettling tortfeasor.

In the present case, the agreements to satisfy any future judgment apply only in the event of an adjudication of causal fault on the part of the settling defendants.

2. The court, in doing so, disposed of the following claims: cross-claims by Georgie Boy Manufacturing, Inc., against 3K Kamper, Vitreous Steel, and Marshall Brass; a third party complaint by Georgie Boy against Riverside Trailer Rentals; cross-claims by Marshall Brass Co. against Georgie Boy, Vitreous Steel, 3K Kamper, and Riverside; cross-claims by Riverside against Georgie Boy, Marshall Brass, Vitreous Steel, and 3K Kamper; cross-claims by 3K Kamper against Marshall Brass, Vitreous Steel, and Georgie Boy; cross-claims by Vitreous Steel against Georgie Boy, Marshall Brass, 3K Kamper, and Riverside; and cross-claims by the plaintiffs against Riverside.

In response to interrogatories on the forms, the jury found 3K Kamper liable on grounds of strict liability, breach of warranty, and negligence, and found no negligence on the part of either plaintiff. Asked to apportion fault among the four released defendants and 3K Kamper, the jury found 3K to be 100% liable.

On the basis of its verdict, the jury awarded $750,000 in damages to plaintiff Thurston and $50,000 to plaintiff Weaver. Judgment for the plaintiffs was entered, but the court, intending to comply with 14 M.R.S.A. § 163, reduced the amount of the award to each plaintiff by the amount received in settlement from the released defendants. Section 163 provides that

> [w]henever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury shall not be a bar to a subsequent action against the other person or persons also causing the injury .... After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

14 M.R.S.A. § 163 (1980). Thurston's award was therefore reduced from $750,000 to $542,500, while Weaver's was reduced from $50,000 to $36,000.01. The plaintiffs subsequently moved to amend the judgment to restore the full amount of each award. They argued that section 163 contemplates reducing an award only when a settlement has been reached with "one or more persons *causing the injury*" (empha-

sis added), and noted that the jury had found 3K Kamper to be 100% liable. The court agreed, entering an amended judgment reinstating the full amount of each award. 3K Kamper moved for judgment n.o.v. or for a new trial, but its motion was denied.

### I.

■ We turn first to the court's ruling upon the motion *in limine*. 14 M.R.S.A. § 163 states, in relevant part, that "[e]vidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent trial against the other person or persons also causing the injury." 14 M.R.S.A. § 163 (1980). This section has been interpreted strictly, *see Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 995 (Me.1983), and is in accord with the long established public policy favoring settlements, *see generally* Note, *Damage Apportionment in Maine: A Proposal for Reform*, 34 Me.L.Rev. 367, 379 n. 60 (1982); *cf. also Emery Waterhouse Co.*, 467 A.2d at 995–96 (discussing legislative purpose behind section 163). Nevertheless, 3K Kamper contends that the jury, without a complete understanding of the role of the released defendants as parties to the litigation, could not adequately have weighed the credibility of evidence as it was introduced. It also argues that the court should have informed the jury that a settlement with these defendants had been reached.[3]

In dealing with this issue, we look behind the ruling on the motion *in limine* to the key procedural event of this case—the granting of the motions for summary judgment. Defendant's lack of opposition to the motions, and, indeed, its very participa-

---

**3.** The defendant cites, in support of this proposition, *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). While 14 M.R.S.A. § 163 by itself precludes such a reference in the circumstances of this case, it is also clear that the defendant has misconstrued the holding in *Frey*. The issue before the *Frey* court was whether evidence of a settlement reached *during trial* should be communicated to the jury. The court ruled that, in

those particular circumstances, the trial judge should inform the jury of the settlement "'if for no other reason than to explain the settling tortfeasor's conspicuous absence from the courtroom.'" 269 N.W.2d at 923 (quoting Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 30 (1977)).

tion in the drafting of the order, signal a tactical decision by which it hoped to gain through an eventual reduction in the percentage of its liability. Nevertheless, it cannot now complain that this maneuver also brought the provisions of 14 M.R.S.A. § 163 to bear. Section 163, by its terms, governs precisely the sort of litigation involved in the case at bar. In so stating, we also note that the names of the released parties were mentioned extensively during trial, and that the court instructed the jury as to theories of liability applicable only to the released defendants. 3K was free to introduce evidence relating to the liability of the released defendants, and was precluded only from mentioning the settlements or referring to the released parties *as* parties or former parties to the litigation. The preclusive effect of section 163 was a clearly foreseeably consequence of 3K's own tactical maneuvering. We perceive no error in the lower court's ruling upon the plaintiffs' motion *in limine*.

## II.

We turn next to the issue of the manner in which the question of fault apportionment was submitted to the jury. The special verdict forms distributed to the jury consisted of eight questions. The first three questions involved a determination of 3K's liability according to three different liability theories. Question 4 and 5 concerned the possible contributory negligence of the plaintiff. Questions 6 and 7 involved computation of damages. Finally, question 8 stated, "[u]sing 100 percent as a total, what percentage of fault do you assign to each of the following ...." It then listed 3K Kamper Ko., Georgie Boy Manufacturing, Inc., Marshall Brass Co., Vitreous Steel Products Co., and Frank's Winnebago, in that order. 3K Kamper now suggests that the presiding justice erred in failing to define the word "fault" in his instructions to the jury, and that the special verdict form should have expressly asked the jury to weigh the liability of each settling defendant according to the same theories of liability that were applied to 3K Kamper. We disagree.

■ We note, at the outset, that no objection to the jury instructions was entered by the defendant at trial. According to M.R.Civ.P. 51(b), "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We review the instructions, therefore, only to determine whether they were so manifestly erroneous as to work a serious injustice and deprive the defendant of a fair trial. *Dongo v. Banks,* 448 A.2d 885, 889 (Me.1982); *Cayer v. Lane,* 390 A.2d 467, 468 (Me.1978).

■ In his jury instructions, the presiding justice stated that

[t]his case is somewhat unique in that you are going to ... have to deal with responsibilities of others than the Defendant in this particular proceeding. You are permitted to take from the evidence whatever you deem to be factually satisfied by a fair preponderance thereof to determine whether or not one or more other parties or individuals may be responsible if you deem there have been any injuries at all.

Although he failed to provide a legal definition of the word "fault" in reference to question 8, the presiding justice did go on to instruct the jury upon theories of liability relevant only to the settling defendants. Thus, despite the absence of an express definition of "fault," the various legal theories upon which fault could logically be based were given in detail. Absent a clear showing that the jury misunderstood its responsibility in apportioning fault, we are to presume that it based its verdict only upon the law as explained by the presiding justice and upon the evidence introduced at trial, *see Michaud v. Steckino,* 390 A.2d 524, 536 (Me.1978); *Goldstein v. Sklar,* 216 A.2d 298, 302 (Me.1966). However, imperfect, the court's instructions do not consti-

tute manifest error sufficient to have deprived the defendant of a fair trial.

■ Moreover, the purpose behind the special verdict form with interrogatories is to "elicit jury findings adequate to enable the trial justice, or later the Law Court, to enter a final judgment on whatever legal determinations are ultimately made, thus to avoid further evidentiary trial of facts." *Dongo*, 448 A.2d at 892. Rule 49(a) provides, in part, that

[t]he court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; *or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate.*

M.R.Civ.P. 49(a) (emphasis added). Thus, rule 49(a) grants considerable latitude to the court in drafting the special verdict form. In the circumstances of this case, a final judgment could be entered only after the basis of the defendant's liability *vel non* had been determined, and the verdict adjusted to reflect the defendant's actual proportionate share of the responsibility for plaintiffs' injuries. It was not essential, for purposes of entering final judgment, that the basis of the released defendants' liability *vel non* be spelled out. The relevance of their liability lay purely as "part of the mechanics by which the percentage of [liability] of the nonsettling tortfeasor is determined." *Pierringer*, 124 N.W.2d at 112. Given the unique circumstances of this case, we cannot say the special verdict form was insufficient for the purposes for which it was intended.

### III.

■■ We turn finally to the decision by the presiding justice to reinstate the full amount of each jury award, having first reduced them in an effort to comply with the requisites of 14 M.R.S.A. § 163. The issue of the propriety of that decision turns upon the correct interpretation of the statutory language. Section 163 requires the court to reduce a verdict whenever settlement has been reached with "one or more persons causing the injury." We have held that, unless the statute itself reveals a contrary legislative intent, the wording of the statute should be accorded its plain, common, and ordinary meaning. *Champagne v. Fortin*, 402 A.2d 471, 473 (Me. 1979); *In re Belgrade Shores, Inc.*, 359 A.2d 59, 63 (Me.1976). Using such a standard, and despite the plethora of policy arguments urged by the parties on both sides, it is clear that the language of section 163 contemplates that a verdict not be reduced by the amount of settlements with parties who the verdict declares are without causative fault.

According to the statutory language, had the jury apportioned fault in such a way that 3K Kamper were any less than 100% liable, section 163 would have mandated a reduction in the jury award. Because the jury found 3K to be solely liable, however, no reduction in the jury award was warranted. In either event, clearly, the language of section 163 governs the entry of judgment in this case. In so holding, we are cognizant of the possible impact upon the jury of the distortion in the parties' relationships fostered by the releases and subsequent entry of summary judgment. We note again that the key procedural event in this case was the motion for summary judgment. Defendant's pre-trial strategy, which included participation in the drafting of the summary judgment order, amounts to a deliberate tactical maneuver by which the defendant hoped to gain by a reduction in the percentage of its liability. In settling with the plaintiffs, the released defendants "bought their peace." *Pierringer*, 124 N.W.2d at 112. By its willingness to have the jury apportion fault, 3K Kamper will not now be heard to complain of the unfavorable result.

847

The entry is:

Judgments affirmed.

McKUSICK, C.J., and NICHOLS and GLASSMAN, JJ., concurring.

ROBERTS, Justice, with whom WATHEN, Justice, joins, concurring in part and dissenting in part.

I join in parts I and II of the Court's opinion. I respectfully disagree, however, with the decision in part III that the verdict should not be reduced by the amount received in settlement from the released defendants. In my view, part III of the Court's opinion presents an unsound interpretation of 14 M.R.S.A. § 163 (1980).

The Court, at page 842, emphasizes that "the wording of the statute should be accorded its plain, common, and ordinary meaning." The decision, nevertheless, imparts to the ordinary word "causing" the whole complicated concept of legal causative fault. In addition, the Court creates out of thin air a requirement that the settling defendants be adjudged to have been legally liable for the plaintiffs' injuries. The Court's interpretation is contrary to the purpose of section 163 and against the trend of modern authority.

At common law the release of one defendant would release all without regard to intent or satisfaction in fact. Section 163 permits a person who seeks recovery for injury or damage to settle with one potentially liable person without releasing other potentially liable persons. The section recognizes the well established rule that the plaintiff is entitled to only one recovery for his claim. The final sentence, therefore, requires reduction of the verdict against non-settling defendants. The legislation presumes that verdict accurately represents full satisfaction.

Because the final sentence of section 163 prevents excessive recovery by a plaintiff, it should be interpreted to apply to any consideration paid by other persons for a release from the potential liability for the same damages covered by the verdict. Cases such as *Theobald v. Angelos*, 44 N.J. 228, 208 A.2d 129 (1965), that focus upon the distinction between a *pro rata* reduction and a *pro tanto* reduction offer no support to the plaintiffs' position. In fact, in the context of our proportional contribution approach, they support the defendant's argument. So, too, does the *Restatement Second of Torts* § 885(3) (1979) approving a *pro tanto* reduction on account of payments "made in compensation of a claim for a harm ... whether or not the person making the payment is liable" to the plaintiff.

I would reduce the plaintiffs' verdicts and affirm the judgments as so modified.