Richard STACEY, Jr., Plaintiff,

v.

BANGOR PUNTA CORP., et al., Defendants,

v.

Robert WAITT, Third-Party Defendant.

Civ. No. 83–0276 P.

United States District Court,
D. Maine.

Oct. 23, 1985.

---

Michael Latti, William J. Griset, Jr., Latti Associates, Boston, Mass., Thomas F. Shortill, John M. Shortill, Sandford, Me., for plaintiff.

M. Roberts Hunt, Glenn H. Robinson, Portland, Me., for defendants.

Thomas R. McNaboe, John Bass, II, Portland, Me., for third-party defendant Robert Waitt.

MEMORANDUM OF DECISION AND ORDER ON MOTION OF THIRD–PARTY DEFENDANT WAITT FOR SUMMARY JUDGMENT ON THE THIRD–PARTY CLAIM FOR CONTRIBUTION

GENE CARTER, District Judge.

Presently before the Court in this matter is the motion of the Third-Party Defendant Robert Waitt for summary judgment on the third-party claim of the Defendants, as Third-Party Plaintiffs, seeking contribution against Waitt as a joint tortfeasor. This action was commenced by the Complaint of the Plaintiff against the Defendants seeking damages for injuries allegedly sustained by the Plaintiff in a hunting accident on November 8, 1980, when the Plaintiff was wounded by a round discharged from a revolver manufactured by Defendant, Smith & Wesson, while the revolver was in the possession and control of its then owner, Waitt. It is undisputed that a previous action had been brought by the Plaintiff against Waitt in the courts of the State of Maine, which resulted in a settlement of Plaintiff's claims against Waitt in the amount of $400,000. *See* Affidavit of Robert Checkoway, filed on September 24, 1985, with attached Complaint (Exhibit "A") and Release, Indemnity and Settlement Agreement (Exhibit "B"). By the release, the Plaintiff releases Waitt

of and from any and all actions, causes of actions, [sic] claims or demands for damages, costs, expenses, compensation, consequential damage or any other thing whatsoever, whether direct or indirect, and inclusive of all claims or demands for contribution, indemnity, or otherwise on account of, or in any way growing out of, all incidents, transactions, events, occurrences or operative facts arising from a certain hunting accident which occurred in Acton, Maine, on November 8, 1980, as set forth in a certain Complaint filed by Richard Stacey against Robert Waitt in the Superior Court for York County, Docket No. CV 81 70.

Exhibit "B," Release, Indemnity and Settlement Agreement attached to Affidavit of Robert Checkoway, at 1. By the terms of the release Plaintiff agreed

to indemnify fully and hold harmless ... [Waitt and other releasees] and to pay any judgments, costs or expenses of any nature including attorney's fees incurred by the ... [Waitt, *et al.*] arising out of any claim or action against ... [Waitt, *et al.*] arising out of the transaction or occurrence referred to herein, including without limitation any claims for indemnity or contribution, or any other claims ·of any nature; including without limita-

tion any claim of negligence or other fault on the part of ... [Waitt, *et al.*]. *Id.* at 2. The consideration for the release is recited to be the payment by the releasees of the sum of $400,000 to the Plaintiff.

By the Third-Party Complaint filed herein on February 6, 1984, Defendants, as Third-Party Plaintiffs, seek to recover from Waitt as Third-Party Defendant for "contribution and/or indemnification for any and all sums awarded to Plaintiff from Defendant/Third-Party Plaintiff, together with interest and costs." Third-Party Complaint at 2. Third-Party Defendant Waitt filed the pending Motion for Summary Judgment on the third-party action at the final pretrial conference on September 24, 1985. He asserts that there remain no genuine issues of material fact. He also argues that he is entitled to judgment as a matter of law on a theory of release and accord because he has signed a "Pierringer release." A "Pierringer release" is a third-party release which contractually discharges that portion of the plaintiff's claims which lies against the settling third-party defendant and by which the plaintiff incurs a contractual commitment to reduce, for enforcement purposes, any judgment obtained against other joint tortfeasors by the amount of the third-party settlement. It takes its name from the case of *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), which first ruled on the effect and validity of such releases. As this is a diversity action brought under the provisions of 28 U.S.C. § 1332, the substantive law of the state in which the cause of action arises is applicable. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties do not dispute that the appropriate state law is that of the State of Maine.

In the briefing on this motion, both parties have relied heavily upon the case of *Thurston v. 3K Kamper Ko., Inc.*, 482

A.2d 837 (Me.1984). That case arose out of the use of a "Pierringer release" under Maine law in the context of a personal injury action involving a claim against joint tortfeasors.[1] The holding in part three of *Thurston, supra,* is that participation by a defendant in submitting a case to the jury so as to seek a precise adjudication of the respective levels of causal fault attributable to parties who are alleged to be joint tortfeasors waives any entitlement to have the amount of the verdict reduced, under the final sentence of 14 M.R.S.A. § 163, by the amount of settlement between the plaintiff and party defendants. The doctrinal implications of that holding dictate the result to be obtained under Maine law on the pending motion.

Under the Maine common law, joint tortfeasors are jointly and severally liable to the injured plaintiff for all damage adjudicated to have been caused to a plaintiff on the entire cause of action. *Hincks Coal Co. v. Milan*, 135 Me. 203, 205, 193 A. 243 (1937). Each joint tortfeasor has an equitable right of contribution among his fellow joint tortfeasors, *Hobbs v. Hurly*, 117 Me. 449, 104 A. 815 (1918), by which, under current Maine law, he is entitled to a precise adjudication of his level of causative fault which contributed to the plaintiff's total injury. *Packard v. Whitten*, 274 A.2d 169, 181 (Me.1971); 14 M.R.S.A. § 156.

Under the common law, however, a plaintiff could not settle with one of several joint tortfeasors, absent agreement to the settlement by nonsettling tortfeasors, without discharging the plaintiff's entire claim as against *all* joint tortfeasors. *See Thurston*, 482 A.2d at 843 (Roberts and Wathen, JJ., concurring and dissenting). Under current Maine law a partial settlement with one or more, but less than all, of several joint tortfeasors, without effecting a complete discharge of the entire cause of action, is possible only because of 14 M.R.

---

**1.** The parties have hotly disputed whether or not the release at issue in this case is a "Pierringer release," and depending upon the resolution of that issue have advanced various theories as to the manner in which the holding in *Thurston, supra*, should be applied to the facts of this case

for purposes of deciding the pending motion. The Court, however, is persuaded that it need not resolve the question of whether the release at issue in this case is a "Pierringer release" for reasons which are set forth subsequently. *See infra*, at 77–78, n. 6.

S.A. § 163.[2] The statute provides that such a settlement with one joint tortfeasor does not automatically discharge the claim against other joint tortfeasors. The statute provides in its final sentence, however, as an obvious effort to prevent a windfall, duplicative recovery to plaintiff, that, on disclosure of the fact of the settlement with a joint tortfeasor or tortfeasors, the trial judge is required to "reduce the verdict by an amount equal to the settlement." 14 M.R.S.A. § 163. The Maine Law Court held in *Thurston, supra,* that "it is clear that the language of section 163 contemplates that a verdict not be reduced by the amount of the settlements with parties who *the verdict declares* are without causative fault." *Thurston v. 3K Kamper Ko., Inc.,* 482 A.2d at 842 (emphasis added). Yet, the legislature left in place the provision in 14 M.R.S.A. § 156 that in a case involving multi-defendants "any defendant shall have the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant." 14 M.R.S.A. § 156.

On this legal matrix the nonsettling joint tortfeasor against whom a verdict is entered possesses two distinct statutorily-based adjudicative options in respect to his contribution right: (1) the right to have the court precisely adjudicate the respective levels of the causative fault of all joint tortfeasors causing the plaintiff's entire damage under 14 M.R.S.A. § 156; or (2) the right to have any verdict rendered against him reduced by the amount of the plaintiff's settlement with other joint tortfeasors under 14 M.R.S.A. § 163. Each right is granted by a freestanding statutory enactment.

Hence, he may insist, by asserting the first right, that the court determine each joint tortfeasor's precise respective level of causative fault. He must accept the result of such a verdict, however, if he seeks it. *Thurston,* 482 A.2d at 842. By doing so, he may, on a favorable verdict result, increase the dollar value of his right of contribution in excess of the amount plaintiff has received from settlements with other joint tortfeasors. This result would occur if the court in assessing the respective levels of causative fault of the various tortfeasor found the nonsettling defendant guilty of a level of causative fault that would entitle that defendant to obtain from the other joint tortfeasors a higher proportion of the total dollar loss assessed against him than the amount of the negotiated settlements between the plaintiff and the other joint tortfeasors.

However, by seeking such an adjudication a nonsettling defendant runs the risk of an unfavorable result, which stems in principal part from the Law Court's interpretation of section 163 to preclude any reduction of a plaintiff's verdict against him because of settlements with joint tortfeasors "who *the verdict declares* are without causative fault." *Thurston,* 482 A.2d at 842 (emphasis added).[3] This may cut

2. Title 14 M.R.S.A. § 163 reads as follows:

Whenever a person seeks recovery for a personal injury or property damage caused by 2 or more persons, the settlement with or release of one or more of the persons causing the injury shall not be a bar to a subsequent action against the other person or persons also causing the injury.

Evidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent trial against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. *If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settle-*

*ment with or the consideration for the release of the other persons.*
(Emphasis added.)

3. The Court notes that a factual distinction may exist between a joint tortfeasor "without causative fault" and one who is declared by the verdict to have a lesser level of causative fault than would be indicated by the amount paid in settlement by that joint tortfeasor with the plaintiff. The rationale of the Maine law of contribution among joint tortfeasors clearly indicates that such distinction would not be accorded any significance in balancing the defendant's alternative rights under §§ 156 and 163. The Maine law has long been that "contribution is not contractual[.] It is an equitable right founded on acknowledged principles of natural justice and enforceable in a court of law." *Hobbs v.*

against him in either of at least two ways,[4] however. First, if the verdict declares that any settling joint tortfeasor is without fault, the plaintiff's verdict against a nonsettling defendant may not be reduced by the amount of that joint tortfeasor's settlement proceeds. *Thurston,* 482 A.2d at 842. Second, to the extent that the verdict establishes the percentage of a nonsettling defendant's causative fault at a level which, when applied to the total verdict against the nonsettling defendant, yields a lesser amount in reduction of the verdict than the amount of the proceeds of that joint tortfeasor's settlement with the plaintiff, the nonsettling defendant must take the lesser of the two amounts, he having sought under section 156 a precise adjudication *by verdict* of the value of his right of contribution against that joint tortfeasor.

If the nonsettling defendant elects to take the benefit of the provisions of section 163, he has the certainty of knowing the value of his right of contribution; it is the amount of the proceeds of the settling joint tortfeasor's settlement with the plaintiff. If he seeks the benefit of his section 156 right of adjudication of the respective levels of causative fault attributable to joint tortfeasors, he sacrifices that certainty. He seeks the possibility that a verdict will establish the value of his right of contribu-

tion to exceed the price of the negotiated bargain between plaintiff and all or any of the settling joint tortfeasors. At the same time, however, he runs the risk that the verdict may establish that value to be less than the price of the plaintiff's bargain with other settling joint tortfeasors.

■ The election of the desired course is, however, the prerogative of the nonsettling defendant, of which he cannot be deprived without his agreement, for the right to the precise adjudication is one given by section 156. The nonsettling defendant cannot be stripped of the benefit of that right because of a bargain between one or more of his fellow joint tortfeasors and the plaintiff, to which he is not a party.

In *Thurston,* the Law Court's holding was based upon a finding that the defendant in that case, 3K, had sought an adjudication of the several joint tortfeasors' respective levels of causative fault, as it was his statutory right to do. The Law Court's holding in that case, therefore, did nothing more than visit upon that defendant the consequences of its strategic decision to give up the certainty of the value of its right of contribution, established under section 163, in order to seek the possible benefits of the exercise of his section 156 right to a precise adjudication of that value.[5]

---

*Hurly,* 117 Me. 449, at 451, 104 A. 815 (1918); *Packard v. Whitten,* 274 A.2d 169, 179 (Me. 1971). Its utilization is allowed to avoid results that are "disproportionately harsh" in the sharing of liability among joint tortfeasors whose conduct is not willful. *Hobbs,* 117 Me. at 452. So long as common law contributory negligence remained in effect under Maine law, concern about disproportionate results were thought to be satisfied by a rule requiring equal contribution among joint tortfeasors. *Scammon v. City of Saco,* 247 A.2d 108, 112 (Me.1968). But with the advent of comparative negligence under § 156 the Maine Law Court reassessed the principle of distribution of liability and concluded that "when recovery by a plaintiff is measured on the basis of proportionate fault ... the ultimate assumption of responsibility should rest on the same equitable basis." *Packard,* 274 A.2d at 180. Under this principle there is "no reason why ... the joint tort-feasor should ultimately be required to contribute more—or less—than a share of the total damages *proportionate to his causal fault.*" *Id.* (emphasis added). This principle of liability based upon proportionate caus-

al fault requires, for reasons of analytical purity, that where a verdict returned under § 156 adjudicates a joint tortfeasor's level of causal fault, that adjudication should be controlling over any indication of such level derived from a speculative analysis of a nonadjudicative consensual settlement.

4. The Court recognizes that there are a number of circumstances other than the two pointed out in the text in which a defendant may come out the loser in electing to proceed under § 156 for the valuation of his right of contribution.

5. The Court notes the reason given by Roberts and Wathen, JJ., for their dissent to part III of the opinion in *Thurston, supra.* That reason is that the possibility of windfall recovery by a plaintiff, which is inherent in the majority's analysis, is inconsistent with the fact that § 163 "recognizes the well established rule that the plaintiff is entitled to only one recovery for his claim." *Thurston,* 482 A.2d at 843 (Roberts and Wathen, JJ., dissenting as to part III).

■ It is clear that until the nonsettling defendant makes such election, it cannot be known whether there exist genuine issues of material fact in the contribution action between a defendant and a settling joint tortfeasor on a third-party claim. If the nonsettling defendant elects to take the benefit of the reduction provided by section 163, there clearly are no such issues, assuming, as here is the case, that the amount of the settlement between the plaintiff and the settling joint tortfeasor is not disputed. The defendant, in that situation, is entitled to have any verdict against him reduced by the established amount of any settlements. If, however, he requests at trial an adjudication of the actual levels of causative fault attributable to any or all joint tortfeasors, then obvious and genuine issues of material fact exist in the contribution action, the amount of the settlement no longer being controlling on, indeed relevant to, the valuation of the nonsettling defendant's right of contribution.

Here Defendants have not made the election in question, nor are they required to do so at any time until this case is submitted to the jury. If at that time Defendants seek or consent to an adjudication of the respective levels of causative fault of themselves and Waitt, there will be genuine issues of material fact in the contribution action between the Defendants and Waitt, which must be resolved by the fact-finder.[6]

---

This monocular focus on the content of § 163 is appropriate so far as it goes. However, it does not view that section, as the majority thought it must, in the context of the right given to a defendant by the final sentence of § 156 to obtain in any multidefendant case a precise adjudication of the level of causative fault among all joint tortfeasors. Clearly the exercise of these divergent rights must be reconciled. The majority did so by an implicit recognition that § 156 conferred an option upon a defendant in such a situation as to how his contribution right should be valued. Once it is realized that any opportunity for a plaintiff to gain more than "one recovery for his claim," *id.,* is created solely by a defendant's exercise of his statutorily created strategic option, there seems to be no legitimate need to be concerned if thereby the plaintiff recovers a windfall. Such a result is wholly preventable by defendants if it is to their strategic advantage to do so. Further, there seems to be a policy benefit achieved by § 156 in that it assures every joint tortfeasor an opportunity to obtain a judicially based adjudication of his respective level of causative fault. This avoids a situation, as would be the case in the absence of the final sentence of § 156, where such result could be dictated by a settlement bargain to which that joint tortfeasor may not be a party. Such a situation would clearly generate at least concern about due process compliance and would almost certainly run afoul of the guaranties of Me. Const. art. I, § 19. The majority's perceptive interweaving of the competing thrusts of the two sections nicely avoids such concerns with respect to the constitutionality of the final sentence of § 163.

6. The Court need not address on this motion the issue so vigorously disputed by the parties as to whether the release between Plaintiff and Waitt is a true "Pierringer release." If the issue were to be addressed, the Court would resolve the issue in the negative because the release in this case clearly contemplates only the routine discharge of a party, namely Waitt, and not the discharge of a portion of the cause of action held by the Plaintiff. Nor does the Plaintiff contract therein to reduce any verdict obtained against other tortfeasors by the amount of the settlement with Waitt. The release is effective to create the normal situation where §§ 156 and 163 are intended to operate to provide a judicial forum for adjudication of the respective levels of causative fault among the joint tortfeasors. In short, by this release, the parties to it have not bargained for a result that excludes any need for such adjudication as to Waitt's level of causative fault, which is the concept that lies at the heart of the "Pierringer release."

It is unnecessary to address the issue, however, principally because even if it is a valid "Pierringer release," the Defendants here have not joined in the settlement that underlies it and are not bound by the release. Thus, the Court is persuaded that it is ineffective to take away the Defendants' statutorily conferred right under § 156 to a precise adjudication of respective levels of fault, absent their consent to the settlement. Further, it is an as yet unresolved question whether "Pierringer releases" are effective in Maine in any event because of the absence of any statutory provision in Maine law allowing an adjudication by verdict of the level of causative fault of a nonparty joint tortfeasor. *See Russell v. Rice,* No. CV-83-57 (Me.Super.Ct., Cum.Cty., June 27, 1985). The Maine Law Court has not yet decided the issue and those Superior Courts that have done so are evenly divided on its proper resolution. *Russell, supra; Clockedile v. Mundy,* No. CV-79-151 (Me.Super. Ct., Cum.Cty., June 3, 1982); *Ryder v. Home Gas Corporation of Pittsfield,* No. CV-79-1195 (Me. Super.Ct., Cum.Cty., Nov. 8, 1982); *Cote v. Pleasant View Acres, Inc.,* No. CV-82-97 (Me.Super. Ct., And.Cty., July 3, 1984); *Keegan d/b/a Muddy Rudder Restaurant v. E.F.E., Inc.,* Nos. CV–

Accordingly, the Motion for Summary Judgment on the Third-Party Claims of Waitt is hereby DENIED.

So ORDERED.

81–789 and CV–81–1328 (Consol.) (Me.Super.Ct., Cum.Cty., Sept. 26, 1984); and *Tardiff v. Maine* *Medical Center,* No. CV–78–1387 (Me.Super.Ct., Cum.Cty., Sept. 26, 1980).