The MEDICAL CENTER OF DE-
LAWARE, INC., Defendant
Below, Appellant,

v.

Boyd MULLINS and Linda Mullins,
Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 16, 1993.
Decided: Jan. 12, 1994.

Richard Galperin and Joseph R. Slights, III (argued) of Morris, James, Hitchens & Williams, Wilmington, for appellant.

Ben T. Castle and Anthony G. Flynn (argued) of Young, Conaway, Stargatt & Taylor, Wilmington, for appellees.

Before HORSEY and HOLLAND, JJ., and HARTNETT, BERGER, and CHANDLER, Vice Chancellors (sitting by designation pursuant to Del. Const. art. IV, § 12), constituting the Court *en banc.*

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Superior Court. The plaintiffs-appellees, Boyd Mullins and Linda Mullins (the "Mullins"), filed a civil action alleging medical malpractice against the defendant-appellant, the Medical Center of Delaware, Inc. (the "Medical Center") and Ghassem I. Vakili, M.D. ("Dr. Vakili"). The jury returned a verdict in favor of the Mullins and against the Medical Center only. The jury's verdict is not at issue in this appeal.

The sole issue in this appeal is whether the Medical Center is entitled to a credit,

pursuant to the Delaware Uniform Contribution Among Tort-feasors Law ("Delaware Uniform Contribution Law"), for the amount of money paid to the Mullins by Dr. Vakili in a pretrial settlement. The Superior Court held that the Medical Center was not entitled to such a credit because the record did not reflect that Dr. Vakili was a joint tort-feasor. We agree. Therefore, the judgment of the Superior Court is affirmed.

### Facts

The relevant facts are undisputed. On the first day of trial, before the jury was empaneled, Dr. Vakili agreed to pay the Mullins $100,000 in exchange for a "joint tort-feasor's release" (the "Release"), which the Mullins executed later that day. The Release not only extinguished the Mullins' claims against Dr. Vakili, but also assured Dr. Vakili of complete "peace" by expressly incorporating the provisions of 10 *Del.C.* § 6304(b). That section of the Delaware Uniform Contribution Law provides a settling defendant with protection from potential claims for contribution from other joint tort-feasors.

Dr. Vakili and the Medical Center had asserted cross-claims against each other. Under the Delaware Uniform Contribution Law, in all cases where a settling "joint tort-feasor" has been released from liability to make contribution to a judgment, any remaining non-settling joint tort-feasors are entitled to a reduction of the judgment by the greater of the amount of the consideration paid for the release or the *pro rata* share of fault attributed to the settling tort-feasor who was released. 10 *Del.C.* § 6304(a). Therefore, notwithstanding his pretrial settlement with the Mullins, Dr. Vakili remained a party throughout trial to enable the Medical Center to prosecute its cross-claim against him for contribution. *See Ikeda v. Molock*, Del.Supr., 603 A.2d 785, 786–87 (1991).

The jury was instructed about the Medical Center's cross-claim against Dr. Vakili and the right of contribution "among persons jointly responsible." In the event that the jury concluded that some act of negligence of the Medical Center caused injury to the Mullins, the Medical Center demanded "contribu-

tion against Dr. Vakili pursuant to 10 *Del.C.* ch. 63," the Delaware Uniform Contribution Law. If the jury determined that the Medical Center and Dr. Vakili were "joint tort-feasors," then the Medical Center demanded that the jury "determine the defendants' relative degree of fault."

The jury was given a Special Verdict Form which contained four questions. The first question asked whether the jury found that the Medical Center "was negligent in a manner that proximately caused injury to the plaintiffs?" The jury answered that question "Yes." The second question asked whether the jury found that Dr. Vakili "was negligent in the manner contended by the defendant Medical Center, and that such negligence of Ghassem Vakili, M.D. proximately caused injury to the plaintiffs?" The jury answered this second question "No." The third question asked the jury to enter the amount of damages it found for each plaintiff. The jury awarded $75,000 to plaintiff Linda Mullins and $15,000 to her husband, Boyd Mullins. The fourth and final question asked the jury to enter the percentages of liability of each defendant. The jury found the Medical Center 100 percent liable. Pursuant to the jury's verdict, the Prothonotary entered judgment against the Medical Center in the amounts of $75,000 in favor of Linda Mullins and $15,000 in favor of Boyd Mullins.

In the Superior Court, the Medical Center asserted that, pursuant to the Delaware Uniform Contribution Law, as a result of the Mullins' Release in favor of Dr. Vakili, it was entitled to a credit in the amount of $100,000. Accordingly, the Medical Center moved that the judgment against it to be marked "satisfied," as a matter of law. The Superior Court denied the Medical Center's application for such relief.

### Joint Tort-feasor Credit
### Persons Jointly "Liable In Tort"

■ The sole issue before this Court is whether the judgment rendered against the Medical Center should be deemed satisfied by reason of the credit provided for in the Delaware Uniform Contribution Law. 10 *Del.C.* § 6304(a). Section 6304(a) provides:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasor unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

*Id.* The credit provided for in the Delaware Uniform Contribution Law is applicable exclusively to "joint tort-feasors." *Id.*

Consequently, the dispositive question in this appeal is whether Dr. Vakili is a joint tort-feasor within the meaning of the Delaware Uniform Contribution Law. *See* 10 *Del.C.* § 6301. If Dr. Vakili is a joint tort-feasor, then the Medical Center is entitled to the full benefit of the credit provided for in the Release. 10 *Del.C.* § 6304(a). If, however, Dr. Vakili is not a joint tort-feasor, then the Medical Center has no right to that credit. *Id.*

The Delaware Uniform Contribution Law defines "joint tort-feasor" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." 10 *Del.C.* § 6301. Since the language of the release stated that its terms were intended to be consistent with the Delaware Uniform Contribution Law,[1] the Medical Center was required to demonstrate Dr. Vakili's joint tort-feasor status (i.e., that he was jointly liable in tort for the Mullins' injuries), as a prerequi-

site to claiming the credit provided for by Section 6304(a).[2]

### "Liable In Tort"
### Joint Tort-feasor Status
### Determined Judicially Or By Admission

■ The Medical Center argues that, consistent with the language in 10 *Del.C.* § 6301, Dr. Vakili's status as a joint tort-feasor was established solely by virtue of the settlement. According to the Medical Center, that status was conclusive after Dr. Vakili's release by the Mullins, without an admission of liability by Dr. Vakili and without regard to the jury's ultimate determination of his non-liability. In support of this contention, the Medical Center cites *Mazer v. Security Insurance Group*, 507 F.2d 1338 (3d Cir.1975). Conversely, the Mullins argue that the question of whether Dr. Vakili was a tort-feasor was determined in the negative when the jury completely exonerated Dr. Vakili of all allegations of negligence.

The Superior Court properly concluded that the Medical Center's reliance upon *Mazer* was misplaced. In *Mazer*, the joint tort-feasor status of the settling party was not determined by the release, but instead was imputed under the doctrine of *respondeat superior*. *Id.* at 1339–40. As *Mazer* noted, the precise manner in which the joint tort-feasor status is determined is not the issue. *Id.* at 1342. Instead, the issue is whether by some reliable means there was a determination, either judicially or by an admission, that the settling party was liable in tort, i.e., a tort-feasor. *Id.* Neither determination of

---

1. The Release states, in pertinent part:

    The foregoing language is intended to comply with 10 *Del.C.* § 6304(b) so as to preclude any liability of Dr. Vakili to any other tortfeasors, if any, for contribution or otherwise, and any language of this Release inconsistent with such intent or with the requirements of 10 *Del.C.* § 6304(b) for the execution of such intent shall be void and of no consequence and in place thereof it is agreed that it shall be considered that this document contains such other language, if any, as is necessary to make effectual the express intent of the parties as aforementioned.

2. *See, e.g., Blackshear v. Clark*, Del.Supr., 391 A.2d 747, 748 (1978) (statute held applicable because both defendants were "at least 'several-

ly' liable for the same injury to plaintiff"); *Clark v. Brooks*, Del.Super., 377 A.2d 365, 372 (1977) (statute applied so long as each defendant is liable to plaintiff for the same injury), *aff'd sub nom. Blackshear v. Clark*, Del.Supr., 391 A.2d 747 (1978); *Fields v. Synthetic Ropes, Inc.*, Del. Supr., 215 A.2d 427, 430 (1965) ("The Joint Tortfeasor Contribution Statute comes into play only when the proposed contributor shares with the defendant a 'common liability' to the plaintiff."); *Ferguson v. Davis*, Del.Super., 102 A.2d 707, 708 (1954) ("Common liability, not concurring negligences, is the *sine qua non* for the invocation of the Uniform Contribution Act."); *Lutz v. Boltz*, Del.Super., 100 A.2d 647, 648 (1953) (statute inapplicable "unless there is a 'common liability' to the injured person").

Dr. Vakili's liability in tort is extant in the case *sub judice.*

### Joint Tort-feasor Status
### Not Established By Admission

The Release, drafted by Dr. Vakili's attorney, provided for a reduction of the Mullins' recovery in accordance with Section 6304(b) of the Delaware Uniform Contribution Law. The Release provided, *inter alia,* that:

> *If it should appear* or be adjudicated in any suit, action or proceeding that Dr. Vakili was guilty of joint, or joint and several negligence which caused injuries losses or damages to the Releasors, in order to save Dr. Vakili, as further consideration for said payment, [Mullins], will satisfy any decree, judgment or award in which there is such a finding or adjudication involving Dr. Vakili on his behalf, to the extent of his liability for contribution, *if it is held* there is any liability for contribution [emphasis added].

According to the plain language of the Release, the Mullins expressly agreed to satisfy any decree, judgment or award to the extent of his liability for contribution, *if Dr. Vakili were to be adjudicated guilty* of joint, or joint and several negligence which caused injuries, losses or damages to the Mullins. 10 *Del.C.* § 6304(b). Thus, the Release, and the protection against potential claims for contribution from other joint tort-feasors which it contemplated, were unambiguously dependent upon a subsequent judicial determination of Dr. Vakili's liability as a joint tort-feasor. Similarly, the Medical Center's right to the credit provided for in Section 6304(a) was also predicated upon such a judicial determination, given the absence of an admission of liability by Dr. Vakili in the Release.

### Joint Tort-feasor Status
### Not Established Judicially

Whenever a plaintiff alleges that two or more persons have contributed to his or her injury by their respective tortious conduct, the question arises of how to determine whether each defendant is a joint tort-feasor, as that term is defined by statute. *Collier v. Eagle–Picher Indus., Inc.,* Md.App., 585 A.2d 256, 265 (1991). When no pretrial settle-

ments have occurred, the joint tort-feasor status of all named defendants is usually determined by the trier of fact. *Id.* Similarly, in cases such as the one *sub judice,* when one or more pretrial settlements have occurred, joint tort-feasor status is also resolved judicially by submitting the liability of a settling defendant to the trier of fact for a determination. *Id.*

The Arkansas Supreme Court has construed a statutory definition of "joint tort-feasor" which is identical to the definition in the Delaware Uniform Contribution Law. *Scalf v. Payne,* Ark.Supr., 266 Ark. 231, 583 S.W.2d 51 (1979). It held that a settling defendant subsequently exonerated of liability by a jury was not a tort-feasor. *Id.,* 583 S.W.2d at 52–53. Thus, in *Scalf,* the non-settling defendant, who the jury found to be a tort-feasor, was not entitled to a reduction of the judgment for the amount paid in settlement. *Id. Accord Thurston v. 3K Kamper Ko., Inc.,* Me.Supr., 482 A.2d 837, 842 (1984). *See also Collier v. Eagle–Picher Indus., Inc.,* 585 A.2d at 266; *Wesley v. United Services Auto. Ass'n,* Colo.App., 694 P.2d 855, 858 (1984).

We find the *ratio decidendi* in *Scalf* to be persuasive. Without a prior specific admission of liability, the jury's determination of a settling defendant's status as a joint tort-feasor is dispositive. In this case, Dr. Vakili was exonerated by the jury of all allegations of negligence. Consequently, it has been judicially determined that Dr. Vakili is *not* a joint tort-feasor within the meaning of the Delaware Uniform Contribution Law. *See Scalf v. Payne,* 583 S.W.2d at 52–53; *Eckels v. Klieger,* Pa.Super., 205 Pa.Super. 526, 210 A.2d 899, 901 (1965).

### Collateral Source Rule

Alternatively, the Medical Center urges this Court to adopt the view that, even if the releasee was not in fact a joint tort-feasor, the amount paid for the release must reduce the injured person's judgment against another. *See Kirby v. New Mexico State Highway Dep't,* N.M.App., 97 N.M. 692, 643 P.2d 256, 259–60, *cert. quashed,* N.M.Supr., 98 N.M. 51, 644 P.2d 1040 (1982). Mullins urges this Court to follow the view of those

courts which require a determination that the releasee is a joint tort-feasor, by admission or judicial proceedings, before an offset may occur. *See, e.g., Collier v. Eagle–Picher Indus., Inc.,* Md.App., 585 A.2d 256, 265–66 (1991); *Thurston v. 3K Kamper Ko., Inc.,* Me.Supr., 482 A.2d 837, 842 (1984); *Scalf v. Payne,* Ark.Supr., 583 S.W.2d 51, 52–53 (1979). The latter authorities, which deny the application of a *pro tanto* credit, in the absence of a determination (either judicially or by admission) that the settling defendant is a joint tort-feasor, are consistent with Delaware's jurisprudence. *See Yarrington v. Thornburg,* Del.Supr., 205 A.2d 1 (1964).

Thirty years ago, this Court was required to decide another request for a credit pursuant to the Delaware Uniform Contribution Law. *Id.* In *Yarrington,* we recognized that the collateral source rule was firmly embedded in Delaware's jurisprudence. *Id.* at 2. That rule finds classic application in an action, such as the present appeal, involving an injured party and a tort-feasor, because it "appears to emphasize the deterrent and quasi-punitive functions of tort law." *State Farm Mut. Auto. Ins. Co. v. Nalbone,* Del. Supr., 569 A.2d 71, 73 (1989).

 "The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and no right to benefit from, monies received by the injured person from sources unconnected with the [tort-feasor]." *Yarrington v. Thornburg,* 205 A.2d at 2. Therefore, the collateral source rule provides that "a tortfeasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an *independent source.*" *Id.* (emphasis added). Accordingly, the collateral source rule resolves what may be competing equities in favor of the innocent injured plaintiff receiving a windfall, rather than an admitted or adjudged tort-feasor bearing less than the full cost of his or her negligent conduct. *State Farm Mut. Auto. Ins. Co. v. Nalbone,* 569 A.2d at 75.

In this case, the Medical Center had a full and fair opportunity to judicially establish Dr. Vakili's liability in tort to the Mullins and, accordingly, that Dr. Vakili was a joint tort-feasor. If the jury had determined that Dr. Vakili was even as little as one percent liable for the Mullins' injuries, that judicial determination of his status as a joint tort-feasor would have entitled the Medical Center to the credit provided for in Section 6304(a). The Medical Center failed to carry its burden of proof. In the absence of a determination that Dr. Vakili was a joint tort-feasor, under the collateral source rule, the Medical Center had no right to a credit because the payment by Dr. Vakili to the Mullins constituted compensation from an independent source. *See Yarrington v. Thornburg,* Del.Supr., 205 A.2d 1 (1964).

### *Conclusion*

The Superior Court properly held that the judgment entered against the Medical Center should not be deemed "satisfied" by reason of the Delaware Uniform Contribution Law. That decision, constituting a separate final judgment, is affirmed.