Judith BENNETT, et al.

v.

Paul A. FORMAN.

Supreme Judicial Court of Maine.

Argued April 1, 1996.

Decided April 24, 1996.

---

Paul R. Dumas, Jr. (orally), Rhett Wieland (orally), Joyce Dumas David & Hanstein, P.A., Mexico, for Plaintiff.

Christopher D. Nyhan (orally), Anne Skopp, Preti, Flaherty, Beliveau & Pachios, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and DANA, JJ.

GLASSMAN, Justice.

Judith Bennett and Stephen Bennett appeal from the judgment entered in the Superior Court (Waldo County, *Mills, J.*) following the jury verdict in favor of Paul A. Forman, M.D., on their complaint against Forman seeking damages for his alleged negligence in causing a non-consensual tubal ligation to be performed on Judith. Because we agree with the Bennetts that the jury was erroneously advised of the settlement of their claim against Paul Jones, Jr., M.D., the surgeon who performed the tubal ligation, we vacate the judgment. Accordingly, we need not address the Bennetts' remaining contentions.

The following evidence was submitted to the jury: In December, 1987, Judith was admitted to Mid–Maine Medical Center for an emergency caesarian section. After performing the caesarian section, but before Judith regained consciousness, Jones, Judith's obstetrician, requested that Forman, the Bennetts' family physician, leave the operating room[1] and ask Stephen "if [he] still wanted to have a tubal [ligation] done."[2] Forman spoke with Stephen and, although he was initially upset and unsure of how to respond, he answered in the affirmative. Forman returned to the operating room and told Jones that Stephen "said to go ahead with the tubal ligation." At the time of her six-week checkup with Jones, Judith first learned that Jones had performed the tubal ligation.

The Bennetts filed the present complaint against Jones and Forman, *inter alia,* alleging that the performance of the tubal ligation without securing Judith's prior consent constituted negligence.[3] Prior to the trial of the case, the Bennetts entered into a settlement agreement with Jones, who was dismissed from the action, leaving Forman as the sole remaining defendant. At the trial, following a bench conference during the course of Forman's cross-examination of Judith and over the Bennetts' objection, the trial court instructed the jury as follows:

[A]s I told you at the beginning of the case, Dr. Jones was involved in this case. He and Ms. Bennett were able to resolve their differences, and Ms. Bennett settled her claim against Dr. Jones.

In the event, after your deliberations, if you decide that Ms. Bennett is entitled to a verdict against Dr. Forman, Dr. Forman is entitled to a credit, and the court will impose this credit. It is not for you to do; it's for me to do.

Dr. Forman is entitled to a credit, against the verdict against him, of the amount of the settlement between Judith Bennett and Dr. Jones.

From the judgment entered in favor of Forman, the Bennetts appeal.

■■■ The Bennetts contend that the trial court erred by advising the jury of their settlement with Jones. We agree. To facilitate the settlement of claims, the Legislature has addressed the prohibitions and procedures to follow in circumstances present in the instant case:

---

1. Forman was not assisting Jones with the operation but was present to "support the family" in his role as the Bennetts' family physician.

2. In the sixth or seventh month of her pregnancy Judith was told by Jones that she "ought to consider having a tubal ligation." The Bennetts decided that they did not wish the procedure to be done and never spoke of it again with Jones or Forman, nor did Judith ever provide either physician with her written consent for the procedure.

3. At the time of the caesarian section Judith gave birth to Meghan, who died the next day as a result of complications. Although several counts in the present complaint assert negligence surrounding the pre-sterilization treatment of Judith and the treatment and eventual death of Meghan, the Bennetts' claims against Forman concern only the non-consensual tubal ligation.

Evidence of settlement with a release of one or more persons causing the injury shall not be admissible at a subsequent trial against the other person or persons also causing the injury. After the jury has returned its verdict, the trial judge shall inquire of the attorneys for the parties whether such a settlement or release has occurred. If such settlement or release has occurred, the trial judge shall reduce the verdict by an amount equal to the settlement with or the consideration for the release of the other persons.

14 M.R.S.A. § 163 (1980). This provision has been interpreted strictly "and is in accord with the long established public policy favoring settlements." *Thurston v. 3K Kamper Ko.*, 482 A.2d 837, 840 (Me.1984) (citing *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 995 (Me.1983); Note, *Damage Apportionment in Maine: A Proposal for Reform*, 34 Me. L.Rev. 367, 379 n. 60 (1982)). We find no merit in Forman's contention that it was necessary for the court to inform the jury of the settlement to ensure that the jury would not award damages against Forman for Jones's negligence. Contrary to his contention, Forman was free to introduce evidence relating to the liability of Jones. *See Thurston*, 482 A.2d at 841. Section 163, however, precluded Forman, or the court, "from mentioning the settlement[ ] or referring to the released part[y] as [a] part[y] or former part[y] to the litigation." *Id. See also Emery Waterhouse*, 467 A.2d at 995–96 (section 163 requires that action against remaining tortfeasors be undertaken "without the evidence of the settlement or release being disclosed to the trier of facts . . ."); *Marois v. Paper Converting Machine Co.*, 539 A.2d 621, 625–26 (Me.1988) (although evidence of prior settlements clearly inadmissible, admission not reversible error when party fails to make proper objection and court instructs jury to disregard). Advising the jury of the settlement in the instant case was error. Because we cannot say that "it is highly probable that admission of the evidence did not affect the judgment," *In Re Elijah R.*, 620 A.2d 282, 285 (Me.1993) (citing *Midland Fiberglass, Inc. v. L.M. Smith Corp.*, 581 A.2d 402, 403 (Me.1990)); M.R.Civ.P. 61;

M.R.Evid. 103, the Bennetts must be granted a new trial.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.